765 P.2d 189

Janice L. **LANDSKRONER**, a/k/a Jan
L. Reiss, and Stanley J. Reiss,
Plaintiffs–Appellants,

v.

Rex D. **McCLURE** and Mary Bernice
McClure, Defendants–Appellees.

No. 17406.

Supreme Court of New Mexico.

Nov. 30, 1988.

Rehearing Denied Dec. 21, 1988.

Hinkle, Cox, Eaton, Coffield & Hensley, Mark C. Dow, Albuquerque, for plaintiffs-appellants.

Ruud, Wells & Mande, Russell W. Ruud, Deborah H. Mande, Albuquerque, for defendants-appellees.

## OPINION

RANSOM, Justice.

Janice Landskroner and Stanley Reiss, formerly a married couple, brought suit against their cotenant, Rex McClure, for breach of contract and fiduciary duties, for fraud and slander of title, and to quiet title to real property. The trial court found in favor of McClure on all claims and plaintiffs appeal. We affirm in part and reverse in part.

The court's findings of fact may be summarized as follows: In 1963, at public auction, two couples purchased adjacent lots. Plaintiffs purchased lot 15 and McClures purchased lot 17. Thereafter, the four individuals agreed to combine the lots into a common tenancy with each person owning an undivided one-fourth interest. A tenancy-in-common agreement was executed in 1964. At the time of execution, the parties assumed the agreement would be recorded by the attorney who prepared it. While reviewing county tax records in March of 1985, however, McClure discovered the

agreement had not been recorded, and he recorded it at that time.

Subsequent to the execution of the agreement, each couple was divorced. In their property settlement, McClure received his wife's undivided one-fourth interest. The Reiss divorce did not disturb the property interests of plaintiffs and each continued to own an undivided one-fourth interest in lots 15 and 17 as tenants in common with McClure.

Until the fall of 1980, the parties had no contact with each other. However, during 1980 and 1981 McClure and Landskroner communicated considerably regarding the possible sale of lot 17. McClure offered Landskroner $4,000 for plaintiffs' interests in lot 17, provided she could produce a quitclaim deed from Reiss. Landskroner was unable to obtain the deed from Reiss, nor could she agree on a selling price with McClure.

In October of 1981, McClure undertook to sell his interest in lot 17 to James Winchell for $4,000. Although the warranty deed prepared by the title company did not specifically limit the grant to McClure's undivided one-half interest, he signed the deed without realizing the conveyance was not specifically so limited. The title company insured the title to lot 17.

In 1981, plaintiffs were informed by Winchell that he had purchased lot 17 from McClure. In November of 1985, assuming that the tenancy-in-common agreement with McClure was ineffective after his conveyance of lot 17, Landskroner attempted to sell a one-half interest in lot 15 for $18,000. During this time she discovered the tenancy-in-common agreement had been recorded in March by McClure, indicating to her that McClure continued to claim an interest in lot 15. This suit ensued.

The following issues are presented for review [1]: (1) whether the unilateral convey-

---

1. As to other claims of error, plaintiffs failed to comply with SCRA 1986, 12-213(A)(3), which requires the brief-in-chief to contain an argument with citations to supporting authorities. We therefore do not address these issues. *See*

*In re Adoption of Doe*, 100 N.M. 764, 676 P.2d 1329 (1984) (issues raised in brief but unsupported by cited authority will not be reviewed on appeal); *Hopkins v. Guin*, 105 N.M. 459, 734

ance of a portion of an estate by one cotenant, without the consent, authority or knowledge of the other cotenants, served to partition the entire estate and terminate any cotenancy agreement; (2) whether such conveyance constituted a breach of any cotenancy agreement; (3) whether the district court abused its discretion by ordering an accounting of the proceeds of the conveyance; (4) whether the district court abused its discretion by failing to award attorney fees to plaintiffs; and (5) whether substantial evidence supported certain findings of fact.

*Partition.* Plaintiffs complain about the court's failure to quiet title in them to lot 15 and to exclude McClure from any ownership interest. Plaintiffs theorize that McClure's conveyance of lot 17, coupled with their acquiescence to and ratification of the sale, effected a partition of the common estate, leaving plaintiffs in sole ownership of the remaining lot. We disagree.

■ We note first that plaintiffs requested a finding that they had ratified the conveyance of lot 17 to Winchell. However, the trial court refused to incorporate this request in its findings. Failure of the court to find as requested is treated as a finding against the party asserting the affirmative. *Gallegos v. Wilkerson*, 79 N.M. 549, 445 P.2d 970 (1968). In this case, failure of the court to find as requested was appropriate.

■ "Ratification" is the adoption or confirmation of an unauthorized act; its effect is the acceptance of the benefits and burdens of that act. *Ulibarri Landscaping Material, Inc. v. Colony Materials, Inc.*, 97 N.M. 266, 639 P.2d 75 (Ct.App. 1981), *cert. denied*, 98 N.M. 50, 644 P.2d 1039 (1982). There can be, of course, no ratification of an act which did not occur, nor acceptance of benefits and burdens which did not accrue. Reiss testified that, after being informed by Winchell of the sale of lot 17, he assumed McClure had reneged on their agreement. Consequently, Reiss was willing to assume ownership of lot 15 as a quid pro quo. Landskroner

also testified that she assumed the cotenancy agreement was no longer in effect when in 1985 she attempted to convey an individual one-half interest in lot 17. However, there was also evidence that McClure never intended to transfer full title to lot 17, and that Winchell had notice of the cotenancy agreement. McClure's intent and Winchell's knowledge of the cotenancy agreement are material to a determination of the extent of the interest conveyed by McClure in lot 17. Even if Reiss and Landskroner ratified the conveyance, just *what* they ratified depends on the extent of the interest conveyed. Under these circumstances, the trial court did not abuse its discretion in refusing to rule that lots 15 and 17 had been partitioned by virtue of assumptions made by Reiss' and Landskroner.

■ The conveyance of an interest in lot 17 did not automatically effect a partition of the cotenancy, irrespective of the extent of the interest conveyed. Generally, a tenant in common may convey his or her own interest in the common estate to a stranger without the knowledge or approval of other cotenants. A. Powell and P. Rohan, 4A *Powell on Real Property* ¶ 602[9] (1982). However, a cotenant may not convey, alienate, or encumber the interest of another cotenant unless he is clearly and properly authorized to do so. *Texas Am. Bank/Levelland v. Morgan*, 105 N.M. 416, 733 P.2d 864 (1987); *Lewis v. Lewis*, 106 N.M. 105, 739 P.2d 974 (Ct.App.1987); *Jolly v. Kent Realty, Inc.*, 151 Ariz. 506, 729 P.2d 310 (Ct.App.1986); *Beckstrom v. Beckstrom*, 578 P.2d 520 (Utah 1978).

As an aspect of this general principle, it is usually said that a cotenant cannot convey an individual interest in a specific parcel of the tract held in common, nor an undivided interest in a specified parcel. The reason, the treatises teach, "is obvious * * *. [S]ince a grantor himself has no right, on partition, to select any particular portion of the land and to insist that his moitey or interest, or any part of it, be set off in that specific portion, so he cannot convey such a right to his grantee." 20

P.2d 237 (Ct.App.1986), *cert. quashed*, 105 N.M. 395, 733 P.2d 364 (1987).

Am.Jur.2d *Cotenancy and Joint Ownership* § 98, at 198 (1965); 7 R.C.L. *Cotenancy* § 75, at 880 (1915); *see also* 2 *Am.Law of Property* § 6.10 at 46–48 (1952); G. Thompson, 4 *Thompson on Real Property* § 1817 (1979 Repl.).

■ Under some circumstances, however, a conveyance of an interest in a specific portion of the common estate will be given effect. For example, some cases hold that where the common property consists of several entirely distinct and separate parcels, a cotenant may convey his undivided interest in such a parcel to a stranger, so long as this does not substantially prejudice the partition rights of his cotenants. 2 *Am.Law of Property* § 6.10, at 48 (1952). Similarly, a court of equity will give effect to the conveyance of an interest in a distinct and specific portion of the common property in a subsequent suit to partition if this can be done without prejudicing the rights of the nonconsenting cotenants. *Peabody Coal Co. v. Rutter*, 283 S.W.2d 842 (Ky.Ct.App.1955); *Lake v. Reid*, 252 S.W.2d 978 (Tex.Ct.App.1952); *Robinson v. O'Connor*, 181 S.W.2d 935 (Tex.Ct.App.1944). Nevertheless, such a conveyance does not affect the title or rights of nonconsenting cotenants in the portion set aside, and is voidable if it prejudices their rights. *Elmore v. Elmore*, 99 So.2d 265 (Fla.1957); *Thompson v. Gaudette*, 148 Me. 288, 92 A.2d 342 (1952); 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 98, at 198–99 (1965).

■ In keeping with these principles, New Mexico law recognizes that under certain circumstances a conveyance which purports to grant complete ownership of a specific tract within the common estate may operate to transfer only the vendor's undivided interest in that portion of the estate. *Madrid v. Borrego*, 54 N.M. 276, 221 P.2d 1058 (1950); *see also Plante v. Conklin Limestone Co.*, 89 R.I. 64, 151 A.2d 116 (1959) (conveyance of a specific portion of commonly owned property was subject to the undivided one-third interests of other cotenants).

In *Madrid*, two brothers, Canuto and Fortunato Madrid, owned a piece of land together as cotenants. Canuto deeded the whole eastern half of the estate to one man, and, several years later, deeded the remainder of the estate to another man. Fortunato did not join in these conveyances. The heirs of Fortunato brought suit to quiet title to the whole estate. This Court held that, absent ratification of the first conveyance by Fortunato, it transferred only Canuto's one-half undivided interest in the eastern half of the estate to the grantee, while the second conveyance transferred a one-half undivided interest in the western half. The heirs of Fortunato would then own a one-half undivided interest in the whole estate.

By analogy, it is clear that McClure's conveyance to Winchell did not necessarily transfer title to more than his one-half undivided interest in lot 17, despite the language in the warranty deed. The application of the holding of *Madrid* to the case at bar is complicated, however, by plaintiffs' decision not to name Winchell as a party to this action. We cannot decide Winchell's interest in lot 17 without his presence as an indispensable party under SCRA 1986, 1–019. Nevertheless, we interpret *Madrid* as an application of the principle that a conveyance of an interest in a specific portion of property held in common will be given effect under equitable principles only insofar as this does not prejudice the interests of the nonconsenting cotenants. Applying this principle to the case at bar, we affirm the result reached by the trial court.

■ Specifically, the conveyance of an interest in lot 17 to Winchell by McClure did not disturb the existing cotenancy relationship between McClure, Landskroner and Reiss in lot 15. Consequently, it was not error for the trial court to refuse to quiet title in lot 15 in the plaintiffs. The remaining interest of McClure in lot 15 depends on the nature of the interest in lot 17 that he conveyed to Winchell in 1981. If the interests of Landskroner and Reiss have been damaged by McClure's actions, he may be required to make an accounting, e.g., in determining his net interest in lot 15.

**■** *Breach of cotenancy agreement.* The plaintiffs' contention that McClure breached the cotenancy agreement and that they are entitled to rescission of the contract is without merit. It was noted at trial that the agreement does not contain any restrictions on alienation of a cotenant's interest in the property. Absent such a restriction, a cotenant is free to deal with a stranger with regard to his or her proportionate share in the estate, although the conveyance may not interfere with the titular or possessory interests of the remaining cotenants. G. Thompson, 4 *Thompson on Real Property* § 1817, at 258 (1979 Repl.). Plaintiffs themselves point out that rescission is an appropriate remedy only where a party's breach, if any, is so substantial and fundamental as to defeat the object of the parties. *Bank of New Mexico v. Northwest Power Prods.*, 95 N.M. 743, 749, 626 P.2d 280, 286 (Ct.App. 1980). Since the cotenancy agreement did not expressly exclude dealings with strangers, McClure's breach of the agreement, if any, does not entitle Landskroner and Reiss to the remedy of rescission.

**■** *Accounting.* The trial court ruled that although McClure had conveyed only his own one-half interest in lot 17 to Winchell, he was obliged to account to his cotenants for half of the $4,000 he received in that transaction. First, we note that if McClure owed such an accounting, Landskroner and Reiss would be entitled to prejudgment interest, as this was an ascertainable amount. *Bill McCarty Const. Co. v. Seegee Eng'g Co.*, 106 N.M. 781, 750 P.2d 1107 (1988). However, we follow the lead of those cases cited above which indicate that McClure's conveyance did not affect the interests of Landskroner and Reiss.

If McClure were to account for half of the proceeds from the conveyance to Winchell, it would imply that McClure still owned half of whatever interest the original cotenants retained in lot 17. Landskroner and Reiss would then each own a one-fourth interest in the portion of lot 17 not conveyed by McClure, instead of a one-fourth interest in the entire lot. While it is clear that McClure conveyed his interest in lot 17 to Winchell, it has not been established that this conveyance disturbed the interests of Landskroner and Reiss in lot 17. Accordingly, we conclude that the accounting was error. If it should be subsequently determined that Winchell was a bona fide purchaser of lot 17, and McClure has consequently affected the Landskroner and Reiss interests in the property, an accounting may be appropriate.

*Substantial evidence issue.* Given our resolution of the preceding issues, we do not need to consider plaintiffs' allegations of error in the court's findings that McClure intended to convey only his own undivided interest in lot 17 to Winchell; that Winchell had notice of the interests of Landskroner and Reiss; and that McClure acted reasonably in relying on Winchell and the title company to document the conveyance properly. The alleged error in these findings goes to their purported application in the construction of the deed from McClure to Winchell. It is also unnecessary to review the court's conclusion of law that McClure only conveyed his interest in lot 17 to Winchell. Because Winchell's interest in lot 17 is not at issue, and because the conveyance to Winchell, while perhaps creating a specific equitable interest in lot 17 under the doctrine considered in *Madrid*, did not disturb the cotenancy relationship between McClure, Landskroner and Reiss in lot 15, these findings are not essential to support the court's judgment.

*Attorney fees.* Finally, plaintiffs' request for this Court to award attorney fees under NMSA 1978, Section 42–5–8(C) or Section 42–6–11 is denied. Section 42–5–8(C) permits the discretionary award of attorney fees of a party to an action for partition of a cotenancy. Again, absent such an abuse of discretion, the court's ruling will not be disturbed. *Keeth Gas Co. v. Jackson Creek Cattle Co.*, 91 N.M. 87, 570 P.2d 918 (1977). Plaintiffs' failure to alert this Court to alleged abuse precludes us from ruling on this issue. Moreover, the award of attorney fees under Section 42–6–11 is mandatory only when the suit is favorably determined for the party trying to establish title to the subject property.

Therefore, for all of the above reasons the judgment of the district court is affirmed, except that the accounting by McClure was inconsistent with the court's findings, and its decision in this regard is reversed.

IT IS SO ORDERED.

SOSA, Senior Justice, and STOWERS, J., concur.