2008-NMSC-009

176 P.3d 1119

**IN THE MATTER OF Kent E. YALKUT, Esquire**

**An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

**No. 29,396.**

Supreme Court of New Mexico.

Jan. 23, 2008.

Joel L. Widman, Disciplinary Counsel Albuquerque, NM, for Petitioner.

Sandenaw & Anderson P.C., Thomas A. Sandenaw, Jr., Las Cruces, NM, for Respondent.

## OPINION

PER CURIAM.

{1} The focus of this disciplinary proceeding is whether the evidence demonstrated that attorney Kent E. Yalkut (Respondent) misappropriated client funds and, as a result, should be disbarred. There is no dispute that Respondent accepted a flat fee from a client and did not deposit it in a trust account as required by the Rules of Professional Conduct. Instead, the flat fee was commingled with other funds in a personal account belonging to Respondent and from which

Respondent made several withdrawals. While it is clear from the evidence that Respondent misused his client's funds, we are not persuaded that the evidence demonstrates the required intent to prove misappropriation. In addition to our previously filed order, we write both to clarify what the evidence must demonstrate to prove misappropriation and to emphasize that flat fees must be placed in trust accounts until they have been earned.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Formal disciplinary proceedings were initiated against Respondent based on his conduct in professional relationships with three separate clients. The Disciplinary Board appointed a hearing committee to hold an evidentiary hearing and issue findings of fact, conclusions of law, and a recommendation for discipline.

{3} The hearing committee found that Respondent had been a partner in the law firm of Yalkut, Hill & Associates, P.C. (YHA) since June 2001. It was the policy of the YHA's members to direct all funds received from clients to Respondent's partner to deposit in the firm's trust or business accounts. In February 2003, A–Affordable Bail Bonds, through its agent, Joe Ruiz, retained Respondent to file an appeal from a $50,000.00 judgment, giving Respondent a check for $5,325.00.

{4} While Respondent was out of town in March 2003, Joe Ruiz called the law firm to inquire about the appeal. Respondent's partner did not know about the appeal and could not find a check in the firm's accounts, but subsequently traced the check to a personal bank account belonging to Respondent. Respondent's personal bank account also contained deposits from other clients. The findings do not state which funds in the personal bank account were Respondent's personal funds, but the hearing committee found that "personal monies" were commingled with "those received from clients." The hearing committee also found that Respondent "spent the commingled money in his personal accounts on a multitude of various personal expenses" and that he had not earned "the entirety of the fee of $5,325.00 before spending it." The hearing committee

then determined that Respondent had committed misappropriation and conversion by depositing the fee into his personal account and spending it.

{5} On March 31, 2003, when Respondent returned to the office, his partner confronted him about the check, and Respondent indicated the deposit was a mistake, stating, "I made a deposit. I generally don't do that. I just spaced out and did it. I've got the money and it hasn't been touched." Respondent then filed the appeal for A–Affordable Bail Bonds on the same day, but it was subsequently dismissed by the Court of Appeals as untimely. Respondent told his client that he would return the $5,325.00 he had received to pursue the appeal, but by the time of the committee hearing, Respondent had not done so.

{6} At some time between that day and the next—March 31 and April 1, 2003—Respondent removed the contents of his office, including files and equipment, from the office he shared with his partner. Respondent testified that he had been looking for new office space as he was going to be leaving the firm, but the committee made no finding reflecting this testimony. Instead, the findings state that the staff at the law firm were not aware that Respondent was leaving; his partner denied that he and Respondent had any discussions about terminating the partnership; and office records indicated that Respondent had numerous appointments scheduled into the second week of April. Respondent did not establish a new trust account for his clients until May 19, 2003.

{7} Based on these findings, the hearing committee concluded that Respondent had violated the following Rules of Professional Conduct: Rule 16–115(A) NMRA (by failing to hold Client 1's property separate from his own property and by failing to hold unearned client funds in trust until earned); Rule 16–401(A) NMRA (by making a false statement of material fact or law to a third person); Rule 16–801(A) NMRA (by knowingly making a false statement of fact to disciplinary counsel by stating he had intended to leave his law firm); Rule 16–804(C) NMRA (by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); Rule

16–804(D) (by engaging in conduct that is prejudicial to the administration of justice); and Rule 16–804(H) (by engaging in conduct that adversely reflects on his fitness to practice law).

{8} The hearing committee also made findings addressing Respondent's relationships with two other clients: Stuart Guttman, who had a civil case, and Sylvia Verdugo, who had a criminal case. In the civil case, Respondent was contacted by the client to file a complaint in a lawsuit, and the complaint was filed in May 2001. Although an associate in Respondent's law firm did some work on this case, Respondent signed the complaint, and the associate left the law firm in February 2002. The file for the case remained in Respondent's law firm, and Respondent did not withdraw from the case. The case was subsequently dismissed for lack of prosecution in October 2002, and in November 2002, the client fired Respondent.

{9} Based on these findings, the hearing committee concluded that Respondent violated the following rules: Rule 16–101 NMRA (by failing to competently represent a client by abandoning the client and his case); Rule 16–103 NMRA (by failing to act with reasonable diligence and promptness in representing a client); Rule 16–302 NMRA (by failing to make reasonable efforts to expedite litigation consistent with the interests of his client); Rule 16–104(A) NMRA (by failing to keep a client reasonably informed about the status of a matter and to promptly comply with reasonable requests for information); Rule 16–804(D) (by engaging in conduct that is prejudicial to the administration of justice); and Rule 16–804(H) (by engaging in conduct that adversely reflects on his fitness to practice law).

{10} The hearing committee found that in connection with the criminal case, Respondent represented his client in trial on criminal matters, and the client was convicted. Respondent failed to file a notice of appeal, docketing statement, and motion for appointment of appellate counsel as required by the Rules of Appellate Procedure. The client contacted the Appellate Defender about her desire to appeal her conviction and Respondent's failure to file the necessary documents. Both the Appellate Defender and disciplinary counsel contacted Respondent, reminding him of his duty to file the documents or obtain his client's waiver of her right to appeal. Respondent did not obtain a written waiver showing that his client had waived her constitutional right to appeal. The hearing committee also found that as a result of Respondent's conduct, the client's conviction was affirmed, and she was not represented on appeal.

{11} Based on these findings, the hearing committee concluded that Respondent had violated the following rules: Rule 16–101 (by failing to competently represent a client by abandoning the client and her case); Rule 16–103 (by failing to act with reasonable diligence and promptness in representing a client); Rule 16–302 (by failing to make reasonable efforts to expedite litigation consistent with the interests of his client); and Rule 16–804(D) (by engaging in conduct that is prejudicial to the administration of justice).

{12} The hearing committee also found the following aggravating factors: a selfish or dishonest motive, a pattern of misconduct, multiple offenses, making false statements, failing to acknowledge the wrongful nature of his conduct, having substantial experience in the practice of law, and indifference to making restitution. The hearing committee then recommended that Respondent be disbarred and not permitted to seek reinstatement under Rules 17–206(A)(1) and 17–214(A) NMRA until he made full restitution, with interest, to his client; pay the costs, with interest, of the investigation and prosecution; take and pass the New Mexico Bar Examination and the Multi–State Professional Responsibility Examination (MPRE); and then reapply for admission to the Bar, pursuant to Rule 15–302(B) NMRA.

{13} The decision of the hearing committee was subsequently reviewed by a hearing panel of the Disciplinary Board. The hearing panel unanimously recommended to this Court that the findings, conclusions, and factors in aggravation be adopted. However, the hearing panel amended the hearing committee's recommendations for discipline on the ground that disbarment was not an appropriate sanction. The hearing panel recommended, instead, that Respondent be suspended for a definite period of time and not

be reinstated until he complied with all conditions that may be imposed by this Court, and that he then be placed on one year's supervised probation. The conditions for reinstatement recommended by the hearing panel included that Respondent pass the MPRE, make full restitution, with interest, to his client, pay all costs of the investigation and prosecution of the disciplinary proceeding, and exercise the right to seek termination of his suspension under Rule 17–214(B)(2).

{14} The hearing panel did not recommend requiring Respondent to retake the New Mexico Bar Examination, but did recommend that Respondent be placed on probationary status for at least one year following reinstatement and be monitored and supervised by an experienced attorney approved by the Disciplinary Board.

{15} Both disciplinary counsel and Respondent petitioned this Court to review the panel's decision. Disciplinary counsel raises two specific issues for review: (1) whether disbarment was, indeed, appropriate under the facts found by the hearing committee, and (2) whether Respondent can be required to comply with conditions for reinstatement when he has been suspended for a definite, rather than an indefinite, period of time. Respondent raised the following two issues: (1) whether the hearing panel failed to evaluate whether the hearing committee's findings were supported by substantial evidence, and (2) whether the hearing panel's recommendation against disbarment indicates, consistent with precedent, that Respondent's conduct was neither wilful nor intentional.

## II. DISCUSSION

■ {16} In reviewing the hearing committee's actions, both the hearing panel and this Court defer to the committee on factual matters, but review legal conclusions and recommendations for discipline de novo. *See In re Bristol,* 2006–NMSC–041, ¶¶ 16–24, 140 N.M. 317, 142 P.3d 905 (per curiam). Because Respondent raises the issue of whether the hearing committee's findings were supported by substantial evidence, we first address the findings before reviewing the legal issues of whether disbarment was appropriate, as the hearing committee recommended, or whether a period of definite suspension,

recommended by the hearing panel, is appropriate and practical in this case.

## A. WHETHER THE COMMITTEE'S FINDINGS WERE SUPPORTED BY SUBSTANTIAL EVIDENCE

{17} Respondent argued generally to both the hearing panel and to this Court that the hearing committee's findings were not supported by substantial evidence. In briefs to the hearing panel, Respondent argued that the hearing committee erred by not adopting findings addressing two situations: (1) findings establishing that he did not misappropriate funds; and (2) findings concerning his representation of Guttman and Verdugo.

■ {18} Our review of the hearing committee's factual findings is deferential to the hearing committee, "viewing the evidence in the light most favorable to the hearing committee's decision and resolving all conflicts and reasonable inferences in favor of the decision reached by the hearing committee." *In re Bristol,* 2006–NMSC–041, ¶ 16, 140 N.M. 317, 142 P.3d 905. Moreover, when "findings of fact are supported by substantial evidence . . . refusal to make contrary findings is not error." *Griffin v. Guadalupe Med. Ctr., Inc.,* 1997–NMCA–012, ¶ 22, 123 N.M. 60, 933 P.2d 859. Indeed, failure to make a finding of fact is regarded as a finding against the party seeking to establish the affirmative. *Landskroner v. McClure,* 107 N.M. 773, 775, 765 P.2d 189, 191 (1988). In reviewing findings, we determine whether the fact-finder's "decision is supported by substantial evidence, not whether the [fact-finder] could have reached a different conclusion." *In re Ernesto M., Jr.,* 1996–NMCA–039, ¶ 15, 121 N.M. 562, 915 P.2d 318.

{19} Relying on *In re Bristol,* 2006–NMSC–041, ¶ 17, 140 N.M. 317, 142 P.3d 905, Respondent argued to the hearing panel that the panel could make additional findings on issues not considered by the hearing committee. Respondent sought to persuade the panel that it could and should make additional findings on the following issues: that Respondent followed accepted local billing practices when he deposited a flat fee in his operating account; that such a deposit was proper because flat fees were treated as

earned when received; that he had earned the flat fee; and that he had earned the other client fees that were deposited in the account. In addition, Respondent argued that the panel should make additional findings regarding YHA's business practices and his representation of Guttman and Verdugo. Respondent's reliance on *In re Bristol* is misplaced. Evidence regarding the issues on which Respondent sought additional findings was considered by the hearing committee; the committee simply chose not to accept Respondent's proposed findings concerning that evidence. *See Landskroner*, 107 N.M. at 775, 765 P.2d at 191 (stating that failure to make a finding is regarded as a rejection of that finding).

{20} Accordingly, we review only the findings that Respondent argues are not supported by substantial evidence. At oral argument before the hearing panel and before this Court, Respondent challenged whether findings under Counts I and II, numbered 9–15 and which address the handling of the flat fee paid by A–Affordable Bail Bonds, were supported by substantial evidence. The challenged findings state that Respondent deposited a check for $5,325.00 from his client, along with other checks, into a personal bank account. By engaging in this conduct, the findings state, Respondent commingled personal funds with those received from clients and spent the commingled funds on various personal expenses. The findings also state that Respondent did not earn the entirety of his $5,325.00 fee before spending it. The committee determined that these actions constituted misappropriation and conversion.

{21} As Respondent correctly points out, statements that Respondent misappropriated and converted funds are legal conclusions, which we will review de novo. The other findings, however, were supported by the following evidence. Joe Ruiz testified that a check for $5,325.00 (which was introduced into evidence) was delivered to Respondent to pursue an appeal. Respondent testified that he deposited the check into a personal account of his that had previously been used for a political campaign, but which had been dormant for some time. Respondent's bank statement showed that on February 28, 2003, the balance in the account was $262.29. The check for $5,325.00 was depos-

ited into the account on February 28, 2003, and other checks and cash were subsequently deposited in March 2003. The bank statement also shows that Respondent wrote multiple checks on the account between March 10, 2003, and May 10, 2003. Indeed, Respondent testified that he believed that when he received flat fees from clients, he had earned the money when it was paid to him.

{22} This was sufficient evidence to support the findings that Respondent deposited his client's funds into a personal account and commingled those funds with his own money. Respondent contends, however, that because he had completed a substantial amount of work on the client's appeal, there was insufficient evidence to support a finding that he had not earned the entirety of his fee before spending it. In addition, Respondent argues, to conclude that Respondent misappropriated and converted client funds would require additional findings.

{23} We first address whether there was sufficient evidence to support a finding that Respondent had not earned the entirety of his fee before spending it. Respondent argued at oral argument before this Court that he testified before the hearing committee that he had earned the fee by reviewing the case, discussing the case history and procedure with his client, and by preparing everything needed to go forward with his client's appeal. It is clear from the record, however, that the Court of Appeals dismissed the appeal because Respondent did not file a notice of appeal from the judgment in a timely manner under Rule 12–201(A)(2) NMRA.

{24} The timely filing of a notice of appeal is a mandatory precondition to the Court of Appeals' jurisdiction, which will only be overlooked in unusual circumstances, such as judicial error. *See Trujillo v. Serrano*, 117 N.M. 273, 277–78, 871 P.2d 369, 373–74 (1994). Consequently, Respondent's failure to timely file the notice of appeal rendered all work done on the appeal irrelevant because the appeal was foreclosed. Under these circumstances, Respondent cannot claim to have earned any of his client's fee. Therefore, the hearing committee's finding, that Respondent had not earned the entirety of

his client's fee before spending it, is supported by substantial evidence, even if that finding is, in fact, an understatement of what occurred.

 {25} Whether these findings, taken together, support the conclusion that Respondent misappropriated or converted client funds, is a separate issue. As this Court explained in *In re Cannain*, 1997–NMSC–001, 122 N.M. 710, 712, 930 P.2d 1162, 1164 (1997) (citations omitted), misappropriation "necessarily involves a dishonest motive and an intent to deprive the client of his or her funds and will almost inevitably result in disbarment." Similarly, "[c]onversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Sec. Pac. Fin. Servs. v. Signfilled Corp.*, 1998–NMCA–046, ¶ 15, 125 N.M. 38, 956 P.2d 837. Thus, both misappropriation and conversion require intentional wrongdoing. Misuse of client funds, on the other hand, "occurs when a lawyer withdraws client funds for an improper purpose, but does so in error, without an intent to deprive the client of the funds." *In re Cannain*, 122 N.M. at 711–12, 930 P.2d at 1163–64. In this case, the hearing committee made no finding that Respondent had a dishonest motive when he withdrew client funds before he had earned them. Indeed, the evidence suggests that Respondent erroneously believed he was entitled to withdraw the flat fee he had deposited into his personal account. That Respondent was incorrect does not necessarily make him dishonest, and here the hearing committee did *not* find dishonesty on Respondent's part. That too is supported by substantial evidence, whether or not this Court would have found similarly if we were acting in a fact-finding capacity.

 {26} We take this opportunity to emphasize that in New Mexico, "[a] lawyer's fee shall be reasonable." Rule 16–105(A) NMRA. In this context, we have previously held that non-refundable unearned fees are unreasonable. *See In re Dawson*, 2000–NMSC–024, ¶ 11, 129 N.M. 369, 8 P.3d 856. Thus, it follows that a flat fee for future legal services cannot be considered as earned

when paid and must be held in trust until earned. As we wrote in *In re Dawson*,

[i]n order for lawyers and their clients to know what portion of a flat fee or retainer may properly be withdrawn from trust, lawyers must inform their new clients of the basis upon which they will compute the amount of fee earned ... and maintain records that will enable them to determine the ongoing status of the fee, even when the fee arrangement is for a flat fee[.]

*Id.* ¶ 12 (citations omitted). In this case, the fee was not placed in trust and, as we stated earlier, was never earned because Respondent failed to file a timely appeal on his client's behalf.

{27} Here, the evidence was sufficient to support findings that Respondent commingled his client's funds with his own and withdrew funds that he had not yet earned. The evidence may have supported a finding of wrongful intent necessary to conclude that Respondent misappropriated or converted his client's funds, but neither the hearing committee nor the hearing panel made any such finding. We defer to the hearing committee when it comes to fact-finding. Without such a finding of wrongful intent, the only conclusion that can be drawn is that Respondent misused or commingled his client's funds, but did not convert them, and should be punished accordingly.

{28} We do not address Respondent's second issue, regarding whether the hearing panel concluded that Respondent's conduct was not intentional.

## B. WHETHER DISBARMENT IS REQUIRED

{29} Disciplinary counsel asked this Court to review whether, under the facts found and conclusions drawn by the hearing committee, Respondent should be disbarred. In light of the conclusion that Respondent commingled by error rather than misappropriated with dishonest intent his client's funds, we consider only what discipline is appropriate in that circumstance. We note that although the charges filed by disciplinary counsel also alleged that Respondent's conduct was dishonest because he made false statements to disciplinary counsel about his intentions to leave

YHA before his departure between March 31 and April 1, 2003, the hearing committee made no findings concerning Respondent's communications with disciplinary counsel, and disciplinary counsel has not argued that this alleged conduct be considered in determining intent to misappropriate funds.

{30} "[T]he level of discipline to impose is a matter that this Court ... considers independently under a *de novo* standard of review." *In re Bristol,* 2006–NMSC–041, ¶ 30, 140 N.M. 317, 142 P.3d 905. In imposing discipline pursuant to Rule 17–206, this Court looks to the ABA *Standards for Imposing Lawyer Sanctions* (1991) for guidance. *See In re Key,* 2005–NMSC–014, ¶ 5, 137 N.M. 517, 113 P.3d 340 (per curiam). These standards "serve as a model which sets forth a comprehensive system of sanctions, but which leaves room for flexibility and creativity in assigning sanctions in particular cases of lawyer misconduct." Preface to ABA *Standards.* The ABA *Standards* state:

> In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors:
>
> (a) the duty violated;
>
> (b) the lawyer's mental state; and
>
> (c) the actual or potential injury caused by the lawyer's misconduct; and
>
> (d) the existence of aggravating or mitigating factors.

ABA *Standards* III(C)(3.0).

{31} Section 4.1 of the *ABA Standards,* which addresses a lawyer's failure to preserve a client's property, states that if a lawyer's conduct is intentional, that is, if the lawyer "knowingly converts client property and causes injury or potential injury to a client," "[d]isbarment is generally appropriate." ABA *Standards* 4.11. If, however, the lawyer's conduct is negligent, that is, if the lawyer "knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client," "[s]uspension is generally appropriate." ABA *Standards* 4.12.

{32} Although we have determined that there was insufficient evidence to show Respondent's conduct was intentional, Respondent should have known that Rule 16–115(A) requires an attorney to keep client funds in a separate trust account. In addition, he should have known that if he did not file a timely notice of appeal in the matter for which he was hired, he would not have earned those funds. Under the ABA *Standards,* therefore, we agree with the hearing panel that suspension is the appropriate sanction.

{33} This is consistent with how we have previously sanctioned attorneys who have commingled and misused client funds, but who lacked the intent to misappropriate funds. *See In re Cannain,* 122 N.M. at 711–12, 930 P.2d at 1163–64 (stating that misuse of client funds without the intent to deprive the client of those funds constituted misuse and warranted suspension); *In re Martin,* 1999–NMSC–022, ¶¶ 18–20, 127 N.M. 321, 980 P.2d 646 (per curiam) (determining that suspension was the appropriate sanction for failing to maintain a trust account, commingling, and unintentionally misusing client funds). Accordingly, we hold that under the evidence before the hearing committee in this case, suspension and not disbarment is the appropriate sanction.

## C. DEFINITE SUSPENSION

{34} The other issue raised by disciplinary counsel is whether conditions for reinstatement can attach to a definite suspension. Counsel argues that it seems inconsistent to require Respondent to comply with certain conditions for reinstatement, but not to make the length of his suspension contingent upon his completion of those requirements. Counsel observes that Rule 17–206(A)(2), which lists definite suspension as a form of discipline, does not include a reference to Rule 17–214(B), which permits disciplinary counsel to file objections to reinstatement. Disciplinary counsel emphasizes that, by contrast, Rule 17–206(A)(3), which lists indefinite suspension as a form of discipline, specifically refers to the rule permitting disciplinary counsel to file objections.

{35} We are not persuaded that conditions for reinstatement can only be attached to indefinite suspensions, nor do we read Rules 17–206 and 17–214 as contradictory, particularly in light of the recent amendments to Rule 17–214, which were proposed by the Disciplinary Board. As amended, and as

disciplinary counsel acknowledges, Rule 17–214(B)(1) now specifically provides for an exception to automatic reinstatement if disciplinary counsel timely files objections with this Court "prior to the expiration of such term." *See* Rule 17–214(B). Rule 17–206(A)(2)'s silence on the filing of objections to reinstatement does not contradict the provisions of Rule 17–214(B) that specifically provide for such objections. *See N.M. Dep't of Health v. Ulibarri,* 115 N.M. 413, 416, 852 P.2d 686, 689 (Ct.App.1993) (stating that appellate courts construe rules in the same way they interpret statutes); *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (stating that when several sections of a statute are involved, they must be read together so that all parts are given effect).

{36} In our view, the rules provide that when circumstances warrant only an indefinite suspension, an attorney may petition this Court for reinstatement as soon as he or she has satisfied the conditions for reinstatement. *See* Rule 17–214(B)(2). However, when circumstances warrant the more serious discipline of a period of definite suspension, the attorney remains suspended for that period, regardless of whether or not any conditions for reinstatement have been satisfied. *See* Rule 17–214(B)(1). If the attorney has not satisfied the conditions imposed by this Court when the period of definite suspension expires, disciplinary counsel is permitted to file objections to the attorney's reinstatement. *Id.* In our view, therefore, there is no inconsistency in suspending an attorney for a definite period and also requiring the attorney to comply with specific conditions before being reinstated.

## III. CONCLUSION

{37} Accordingly, in our October 15, 2007 order consistent with the hearing panel recommendation, we suspended Respondent for one year. We also ordered that before reinstatement Respondent must file an affidavit stating that he has complied with the terms and conditions of the order by making restitution with interest through the Office of Disciplinary Counsel to his client; by taking and passing the Multistate Professional Responsibility Examination; and by paying the costs of this disciplinary proceeding. Finally, we ordered that upon reinstatement Respondent would be placed on a year's supervised probation, subject to the terms and conditions set forth in our order.

{38} **IT IS SO ORDERED.**