This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40578

**FOX GUINN,**

Plaintiff/Counterdefendant-Appellee,

v.

**PEGGY WILLIAMS,**

Defendant/Counterplaintiff-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Court Judge**

Floyd D. Wilson, P.C.
Floyd D. Wilson
Cedar Crest, NM

for Appellee

Lovell, Lovell, Isern & Farabough, LLP
Joe L. Lovell
Hannah L. Rivera
Amarillo, TX

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Peggy Williams appeals from a judgment entered against her by the district court following a bench trial. On appeal, Defendant argues that the district court erred by (1) concluding that Plaintiff Fox Guinn's claim was timely filed, (2) granting Plaintiff's claim for unjust enrichment, and (3) rejecting Plaintiff's counterclaims. Because we conclude that Plaintiff's claim was not time-barred, was supported by

substantial evidence, and that Defendant's counterclaims were either granted, unpreserved or unsupported, we affirm.

## BACKGROUND

**{2}**    The following factual background is drawn from the district court's findings of fact entered after the trial. Plaintiff and Defendant's late husband, Bennett Williams, entered into an arrangement to acquire vacant lots and develop them. Plaintiff and Williams never entered into a formal contract or partnership. Nevertheless, under the arrangement, Williams purchased land and financed construction of buildings on it, including the purchase of materials, permits, and the cost of subcontractors. In return, Plaintiff served as the general contractor for construction. After construction and sale of the properties, Plaintiff and Williams would equally share the net profit. Williams and Plaintiff developed and sold approximately thirteen properties in this fashion.

**{3}**    In September 2011, Williams and Defendant purchased property at 117 and 121 Gayland (the properties). Williams and Defendant took title to the properties as joint tenants with a right of survivorship. They financed the construction of a duplex on each lot with loans they borrowed from the Bank of Clovis. They were the only obligors on the loans. Williams died in October 2011 shortly after purchasing the properties.

**{4}**    In November 2011, Fox Homes, Inc., Plaintiff's company, received the permits for construction of the duplexes on the properties. Construction was completed in April 2012. Defendant with Plaintiff's knowledge, began renting out the duplexes the same month, and paid all expenses associated with the ownership, maintenance, and rental of the two duplexes. By September 2012, Defendant had paid all subcontractor invoices, bills, and charges for goods and services incurred in connection with the construction of the duplexes. Plaintiff never received his share of the net rental income, nor did he request Defendant pay him for his construction services related to the properties, or reimburse him for gross receipts taxes (GRT) he was assessed on the properties.

**{5}**    In March 2020, Defendant attempted to sell both properties without splitting the profits with Plaintiff. In response to Defendant's attempt to sell, Plaintiff delivered an invoice to the title company, which was reviewing the properties for sale, asserting his claim for the money owed to him. As a result, Defendant sent a letter to Plaintiff demanding he withdraw the claim. After receiving the letter, Plaintiff filed his complaint.

**{6}**    The district court concluded that, although Defendant and Plaintiff were not engaged in a partnership, and neither Williams nor Defendant entered into an enforceable contract with Plaintiff, nonetheless, Defendant was unjustly enriched by the services Plaintiff provided. The district court ordered Defendant pay restitution to Plaintiff for his services and to pay the GRTs assessed against him, altogether approximately $85,000. Defendant appeals.

## DISCUSSION

**{7}** We begin by reiterating basic appellate principles to remind Defendant of her burdens on appeal. First, this Court operates pursuant to a presumption of correctness in favor of the district court's rulings, and it is the appellant's burden to demonstrate error on appeal. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that the burden is on the appellant to clearly demonstrate that the district court erred); *see also State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that there is a presumption of correctness in the rulings or decisions of the district court, and the party claiming error bears the burden of showing such error). Second, "[w]e will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104. Summarizing the evidence and making a generalized assertion that the evidence does not support the district court's findings of fact, without directly attacking them, is insufficient. *See Tres Ladrones, Inc. v. Fitch*, 1999-NMCA-076, ¶ 17, 127 N.M. 437, 982 P.2d 488 (rejecting the contention that no evidence supported a finding because the appellant failed to properly attack the finding). Lastly, it is Defendant's burden to provide citations to the record. *See Santa Fe Expl. Co. v. Oil Conservation Comm'n*, 1992-NMSC-044, ¶ 11, 114 N.M. 103, 835 P.2d 819 (stating that appellate courts have no duty to entertain factual contentions on appeal not supported by citations to the record proper). With these principles in mind, we turn to our discussion of the issues raised.

**I.     The District Court Did Not Err in Determining Defendant Was Unjustly Enriched**

**A.     Plaintiff's Unjust Enrichment Claim Is Not Barred by the Applicable Statute of Limitations**

**{8}** Defendant first asserts that the district court erred in granting Plaintiff's claim for unjust enrichment because it was barred by the applicable four-year statute of limitations. The parties agree that the applicable statute of limitations is four years, *see* NMSA 1978, § 37-1-4 (1880). However, Defendant argues that the cause of action accrued in 2012 upon the completion of the construction of the duplexes, rather than in 2020 when Defendant sought to sell the properties without splitting the profit with Plaintiff. We agree with the district court that the cause of action accrued in 2020.

**{9}** The determination of which accrual rule applies to a cause of action is a question of law when the applicable statute is silent. *Roberts v. Sw. Cmty. Health Servs.*, 1992-NMSC-042, ¶ 15, 114 N.M. 248, 837 P.2d 442 ("In absence of explicit instructions from the legislature, when a cause of action accrues under a statute of limitation is a judicial determination."). However, once the district court has determined the applicable rule, the question of when the cause of action accrued under that rule is a question of fact. *See Williams v. Stewart*, 2005-NMCA-061, ¶ 16, 137 N.M. 420, 112 P.3d 281 (stating that the application of an accrual rule is a jury question especially when conflicting inferences may be drawn); *Yurcic v. City of Gallup*, 2013-NMCA-039, ¶ 10, 298 P.3d 500 (stating that whether a claim has been filed timely is a question of fact that only becomes a question of law "when the facts are undisputed").

**{10}** The district court found that Plaintiff and Williams had formed an arrangement in which Plaintiff would act as general contractor for the properties jointly owned. It further determined that approximately thirteen homes were built this way and Plaintiff was paid for his work only after the properties were sold. Additionally, the district court determined that Defendant attempted to sell the homes without paying Plaintiff and told Plaintiff she would file suit against him if he did not withdraw the invoice Plaintiff submitted to the title company requesting payment. Lastly, the district court found that Plaintiff had not been paid and, because of the existing arrangement, he had not expected to be paid until the properties were sold. Based on these findings, the district court concluded that Plaintiff's claim of unjust enrichment did not accrue until Plaintiff learned that Defendant attempted to sell the properties without paying him.

**{11}** The district court's findings were supported by Plaintiff's testimony concerning the longstanding arrangement between Williams and himself. Therefore, we conclude that the district court's findings of fact were supported by substantial evidence. *See Autrey v. Autrey*, 2022-NMCA-042, ¶ 9, 516 P.3d 207 ("The testimony of a single witness, if found credible by the district court, is sufficient to constitute substantial evidence supporting a finding.").

**{12}** Moreover, the district court's conclusion that Plaintiff's cause of action accrued in 2020 is in accordance with the law. Defendant sought to profit at Plaintiff's expense when she put the properties up for sale without paying Plaintiff. *See Martin v. Comcast Cablevision Corp. of Cal., LLC*, 2014-NMCA-114, ¶ 13, 338 P.3d 107 (explaining that "[a] 'benefit' for purposes of an unjust enrichment claim is any form of advantage that has a measurable value including the advantage of being saved from an expense or loss" (internal quotation marks and citation omitted)). Thus, Plaintiff's claim was triggered in March 2020 when Defendant put the properties up for sale. Since Plaintiff filed his complaint in April of the same year, his cause of action for unjust enrichment was timely filed. Based on the foregoing, we discern no error.

**B.     Substantial Evidence Supports the District Court's Conclusion That Defendant Was Unjustly Enriched**

**{13}** Defendant contends that the district court erred in concluding she was unjustly enriched because the claim was not supported by substantial evidence.[1] Defendant asserts that we should relax our deferential standard of review because the district court adopted verbatim four of the five conclusions of law Plaintiff requested relating to his claim for unjust enrichment. *See Reynolds v. Landau*, 2020-NMCA-036, ¶ 18, 468 P.3d 928 (stating that although substantial evidence review "is generally deferential, we may relax our usual deference when the district court adopts verbatim the prevailing party's

---

[1]Defendant also contends that the district court erred in granting Plaintiff's unjust enrichment claim because the only evidence presented at trial is that, if she was unjustly enriched, it was by Fox Homes, Inc. not by Plaintiff. Defendant failed to raise this argument at trial, other than mentioning it in her closing brief, and failed to assert it in her requested findings of fact and conclusions of law. Thus, we agree with Plaintiff that Defendant failed to fairly invoke a ruling of the district court on these grounds and that the issue was not preserved for appeal.

extensive requested findings and conclusions"). The district court rejected most of Plaintiff's proposed findings, as such, we reject Defendant's assertion that the district court adopted them wholesale and will apply our customary standard of review. Based on well-known principles of review, we see no error in the district court's conclusions.

**{14}** To prevail on a claim for unjust enrichment, "one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *City of Rio Rancho v. AMREP Sw. Inc.*, 2011-NMSC-037, ¶ 54, 150 N.M. 428, 260 P.3d 414 (internal quotation marks and citation omitted). Here, the district court concluded that Defendant had been unjustly enriched because Defendant knowingly benefited from Plaintiff's work and then refused to compensate him. In support of its conclusion, the district court found that Defendant exclusively owned the properties in question, attempted to sell the properties without splitting the profits with Plaintiff, has never compensated Plaintiff for his work as general contractor nor reimbursed him for the GRT he was assessed, and "has mixed feelings about whether or not Plaintiff should still be compensated for his work."

**{15}** The district court's findings were based on not just Plaintiff's testimony, but also on Defendant's, which she fails to acknowledge on appeal. Defendant testified that although she had nothing to do with the negotiation of the terms of the arrangement between Williams and Plaintiff, she acted as the bookkeeper for the purchase, development, and sale of properties pursuant to the arrangement. Defendant further testified that after Williams' death in 2011 she told Plaintiff to go ahead with the construction on the two properties; Defendant understood Plaintiff would need to be paid for his work despite not knowing the amount; Defendant conceded that Plaintiff had not been paid; and Defendant stated that she had not paid the GRT, nor reimbursed Plaintiff for the assessed GRT. The district court did not err in granting Plaintiff's claim for unjust enrichment because it is supported by substantial evidence.

## II.  Defendant's Counterclaims[2]

**{16}** Defendant argues that the district court erred in failing to grant her counterclaims for declaratory judgment, fraudulent lien, tortious interference with a contract, and sanctions. We disagree.

## A.  Declaratory Judgment

**{17}** Defendant contends that the district court erred by failing to grant her request for declaratory relief. The district court, however, granted all declaratory relief Defendant sought, except for her claim of fraudulent lien and the claim that Plaintiff's notice of lis

---

2Defendant also argues that the district court erred by failing to make findings in support of her affirmative defenses. However, Defendant did not submit proposed findings of fact to the district court in support of these defenses, and we are unable to review them. *See* Rule 12-321(A) NMRA; *see also State v. Bell*, 2015-NMCA-028, ¶ 2, 345 P.3d 342 (stating that one of the purposes of preservation is "to create a record sufficient to allow this Court to make an informed decision regarding the contested issue"). We will not consider this argument further.

pendens was baseless. Because of this, we limit our review to the district court's denial of declaratory relief to these two matters.

**{18}** We review the district court's denial of declaratory judgment for an abuse of discretion. *Allstate Ins. Co. v. Firemen's Ins. Co.*, 1966-NMSC-120, ¶ 9, 76 N.M. 430, 415 P.2d 553 ("It is the general rule that the granting of declaratory relief is discretionary, under both the federal and the state acts." (internal quotation marks, and citation omitted)). Our task is to decide whether the ruling is "clearly against logic and effect of the facts and circumstances presented by Defendant. *See Headen v. D'Antonio*, 2011-NMCA-058, ¶ 6, 149 N.M. 667, 253 P.3d 957 (internal quotation marks and citation omitted). In so doing, we must also consider whether the district court's decision "is premised on a misapprehension of the law." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (alteration, internal quotation marks, and citation omitted). "[O]ur review of the application of the law to the facts is conducted de novo." *Id.* Moreover, interpretation of a statute is a question of law we review de novo. *Morgan Keegan Mortg. Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066. Based on our review of the facts presented to the district court, we perceive no error.

**{19}** Defendant argues that the invoice Plaintiff sent to the title company seeking compensation for his work on the properties was a fraudulent lien in violation of the N.M. Lien Protection Efficiency Act, NMSA 1978, §§ 48-1A-1 to -9 (1999). However, the district court explicitly concluded that the invoice was not a lien under Sections 48-1A-1 to -9. Section 48-1A-9(C) provides relief where a document purporting to create a nonconsensual common law lien has been filed or recorded in the office of a filing officer, such as a clerk or a county court. It is uncontested that Plaintiff did not file the invoice with the county clerk or record it with any state, local, or federal official, and without recordation, no lien was created. Based on the foregoing, we conclude that the district court did not abuse its discretion in denying Defendant's requested relief regarding the invoice given to the title company.

**{20}** Defendant further argues that because the district court found that Plaintiff had no ownership interest in the properties either via contract or through a partnership and that Plaintiff's invoice did not qualify as a lien, the district court erred in determining that Plaintiff's lis pendens notice was not baseless. We disagree. Filing a notice of lis pendens "is merely a republication of the pleadings filed in the pending judicial proceedings." *High Mesa Gen. P'ship v. Patterson*, 2010-NMCA-072, ¶ 10, 148 N.M. 863, 242 P.3d 430 (internal quotation marks and citation omitted). Such a filing "is not limited to those cases in which the adverse party claims a beneficial interest in the title to the property." *Id.* Plaintiff asserted in his complaint that through his partnership with Defendant, he had an interest in equally splitting any and all profits received from the sale of the properties. Although the district court found that no partnership existed, it did find that an informal arrangement existed between Williams and Plaintiff. Thus, Plaintiff properly pleaded a cause of action, which involved an interest in the proceeds of the sale of property that created the fund that measured his damages, and from which he

would be paid. The district court did not err in refusing to grant Defendant declaratory relief based on her argument that the lis pendens was groundless.

**{21}** Finally, we conclude that the district court did not abuse its discretion in refusing to cancel the lis pendens before resolution of this appeal. It is within the district court's discretion to discontinue or revoke a notice of lis pendens once the action is settled. *See* NMSA 1978, § 38-1-15 (1873-1874). Moreover, "the lis pendens established by [a] suit continues until expiration of the time for appeal or until final disposition of the case by the appellate court." *Salas v. Bolagh*, 1987-NMCA-138, ¶ 12, 106 N.M. 613, 747 P.2d 259. Again, we find no error.

### B.      Fraudulent Lien

**{22}** Next, Defendant argues that the district court erred by concluding that the invoice Plaintiff sent to the title company was not a fraudulent lien in violation of Section 48-1A-9. Because the district court did not err in determining that there was no lien we need not review this argument.

### C.      Tortious Interference With a Contract

**{23}** Defendant next argues that the district court erred in not granting judgment in favor of her claim of tortious interference because her claim was supported by substantial evidence. We disagree.

**{24}** To establish a claim of tortious interference with a contract, a claimant must establish that the defendant induced the breach without justification or privilege to do so. *See LensCrafters, Inc. v. Kehoe*, 2012-NMSC-020, ¶ 40, 282 P.3d 758 (stating the elements of tortious interference with a contract). To establish that a party acted without justification, the claimant must prove the other party acted with "either an improper motive or improper means." *Martin v. Franklin Cap. Corp.*, 2008-NMCA-152, ¶ 7, 145 N.M. 179, 195 P.3d 24 (internal quotation marks and citation omitted). The inquiry is whether the improper motive was "the [party]'s primary motivation for the interference." *Id.* (internal quotation marks and citation omitted). Interfering with a contract to benefit oneself is not an improper motive. *Williams v. Ashcraft*, 1963-NMSC-080, ¶ 5, 72 N.M. 120, 381 P.2d 55 ("As a general rule, justification for interfering with . . . [the contract of another] exists where the actor's motive for doing so is to benefit himself."). Thus, if Plaintiff's primary motivation for interfering with Defendant's contract was to defend his own financial interest, he was justified in doing so and Defendant could not establish tortious interference with a contract.

**{25}** Defendant requested that the district court find that Plaintiff "did not have justification or privilege to induce the breach of contracts to [the properties]," by sending the invoice to the title company. The district court rejected this finding. *See In re Yalkut*, 2008-NMSC-009, ¶ 18, 143 N.M. 387, 176 P.3d 1119 ("[F]ailure to make a finding of fact is regarded as a finding against the party seeking to establish the affirmative."). Instead, the district court found that Plaintiff sent the invoice to the title company after

learning of the sale of the properties "to assert a claim for money owed related to the homes," and not for some other purpose. The district court's finding was supported by Plaintiff's testimony, and thus by substantial evidence. *See Autrey*, 2022-NMCA-042, ¶ 9 ("The testimony of a single witness, if found credible by the district court, is sufficient to constitute substantial evidence supporting a finding."). Therefore, we conclude that the district court did not err in determining that Defendant failed to establish tortious interference with a contract.

## D.     Sanctions

**{26}**    Finally, Defendant contends the district court erred in failing to find facts to support her request for sanctions. We review the imposition of sanctions or refusal to do so under Rule 1-011 NMRA for an abuse of discretion, *see Rivera v. Brazos Lodge Corp.*, 1991-NMSC-030, ¶ 16, 111 N.M. 670, 808 P.2d 955, and conclude that the district court did not err.

**{27}**    A district court may impose sanctions on an attorney or party "in those rare cases in which [a party or attorney] deliberately presses an unfounded claim or defense." *Id.* (alterations, internal quotation marks, and citation omitted). The test for the propriety of Rule 1-011 sanctions "depends on what the attorney or litigant knew and believed at the relevant time." *Rivera*, 1991-NMSC-030, ¶ 18. In order to support sanctions, there must be particularized findings of misconduct. *Bernier v. Bernier ex rel. Bernier*, 2013-NMCA-074, ¶ 21, 305 P.3d 978.

**{28}**    The district court concluded that there was insufficient evidence to support Defendant's claim for sanctions. In so doing, the district court necessarily rejected Defendant's requested finding that Plaintiff brought his claims in bad faith and without good cause. "[F]ailure to make a finding of fact is regarded as a finding against the party seeking to establish the affirmative." *In re Yalkut*, 2008-NMSC-009, ¶ 18. Deferring to the district court's weighing of the evidence and credibility determinations, *see N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 23, 336 P.3d 436, we agree with the district court's conclusion that sanctions were not warranted and find no error. *See Landess v. Gardner Turf Grass, Inc.*, 2008-NMCA-159, ¶ 16, 145 N.M. 372, 198 P.3d 871 ("[T]he [district court] judge is in the best position to view the factual circumstances surrounding an alleged violation.").

## CONCLUSION

**{29}**    For the reasons above, we affirm the district court's final judgment granting Plaintiff's claim for unjust enrichment.

**{30}    IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, Sitting by designation**