2008-NMCA-152

195 P.3d 24

**Gerald T. MARTIN and Juana M. Martin, individually and on behalf of all persons similarly situated, Plaintiffs–Appellants,**

v.

**FRANKLIN CAPITAL CORPORATION, a Utah corporation licensed to do business in New Mexico, Defendant.**

and

**Century–National Insurance Company, a California corporation, Defendant–Appellee.**

No. 27,369.

Court of Appeals of New Mexico.

Sept. 16, 2008.

180

Office of Feferman and Warren, Richard
N. Feferman, Albuquerque, NM, Malakoff,
Doyle & Finberg, P.C., Michael P. Malakoff,
Pittsburgh, PA, for Appellants.

Sutin, Thayer & Browne, P.A., Jay D. Hertz, Albuquerque, NM, for Appellee.

## OPINION

FRY, Judge.

{1} Plaintiffs in this class action case (Borrowers) appeal from the district court's order granting summary judgment in favor of Defendant Century National Insurance (Century) on Borrowers' allegations of tortious interference with contract. Borrowers argue that a genuine issue of material fact exists as to whether Century intentionally interfered with retail installment contracts between Borrowers and another defendant who is not a party to this appeal, Franklin Capital Corporation (Franklin), and thus that summary judgment was inappropriate. We affirm.

## BACKGROUND

{2} This case arose in the context of motor vehicle financing loans. Borrowers, who are members of a class certified by the district court, purchased motor vehicles from New Mexico motor vehicle dealers and financed the purchases by executing retail installment contracts. Franklin purchased the retail installment contracts from the motor vehicle dealers. Under the terms of the retail installment contracts, Borrowers were required to maintain insurance on the vehicles. If a borrower failed to maintain the requisite coverage, the retail installment contract provided that Franklin could purchase insurance on the borrower's vehicle. The parties refer to this insurance as "force-placed insurance."

{3} Franklin purchased master policies from Century that named Franklin as the insured and provided insurance to cover Franklin's interest in every vehicle Franklin financed or refinanced. These policies provided that coverage for each vehicle would be automatically effective "at any time thereafter the interests of [Franklin] are not covered by other specific insurance." Franklin also entered into a contract with Century whereby Century provided follow-up and record maintenance services on the retail installment contracts Franklin owned. Under this contract, Century agreed to send notices to borrowers reminding them of their obligation to purchase insurance and, if a borrower failed to provide proof of insurance, Century sent notices that insurance had been purchased on the borrower's behalf and that the premium for the insurance had been added to the borrower's loan balance.

{4} Borrowers alleged that the force-placed insurance was different from and more expensive than the insurance they were required to purchase under the retail installment contracts. Among other differences, Borrowers maintained that the retail installment contracts required a maximum deductible of $500 and coverage for specified perils, while the force-placed insurance provided a deductible of $250 and comprehensive coverage, both of which resulted in a more expensive premium. Borrowers asserted claims against Franklin and Century.

{5} Borrowers alleged that Century tortiously interfered with Borrowers' retail installment contracts by inducing Franklin to purchase the more extensive insurance and to add the excess premiums to Borrowers' loan balances. The district court granted summary judgment in favor of Century. On appeal, Borrowers argue that the district court erred in granting summary judgment in favor of Century because Borrowers established that genuine issues of material fact exist on the elements of tortious interference with contract. We present additional facts below as necessary for our analysis.

## DISCUSSION

{6} We review summary judgment under a de novo standard of review. *Fikes v. Furst,* 2003–NMSC–033, ¶ 11, 134 N.M. 602, 81 P.3d 545. A party is entitled to summary judgment if the party can demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1–056(C) NMRA. "Summary judgment may be proper even though some disputed issues remain, if there are sufficient undisputed facts to support a judgment and the disputed facts relate to immaterial issues." *Fikes,* 2003–NMSC–033, ¶ 11, 134 N.M. 602, 81 P.3d 545 (internal quotation marks and citation omitted). An issue of fact is "material" if the existence (or non-existence) of the fact is of consequence under the substantive rules of law governing the parties' dispute. *See*

*Farmington Police Officers Ass'n v. City of Farmington,* 2006–NMCA–077, ¶ 17, 139 N.M. 750, 137 P.3d 1204 (discussing materiality in the context of a dispute over the interpretation of a collective bargaining agreement). If the movant establishes a prima facie case that summary judgment should be granted, the burden shifts to the party opposing the motion to show a reasonable doubt that no genuine issue of fact exists. *Fikes,* 2003–NMSC–033, ¶ 11, 134 N.M. 602, 81 P.3d 545.

{7} The elements of intentional interference with a contract are

(1) [the defendant] had knowledge of the contract; (2) [the p]laintiff was unable to fulfill [its] contractual obligations; (3) [the defendant] played an active and substantial part in causing [the p]laintiff to lose the benefits of the contract; (4) [the p]laintiff suffered damages resulting from the breach; and (5) [the defendant] induced the breach without justification or privilege to do so.

*Deflon v. Sawyers,* 2006–NMSC–025, ¶ 16, 139 N.M. 637, 137 P.3d 577. The plaintiff must "prove that the defendant acted with either an improper motive or improper means," and the improper motive or improper means must be used in persuading the person to breach the contract, "but the improper motive need not be the sole motive." *Fikes,* 2003–NMSC–033, ¶¶ 20, 22, 134 N.M. 602, 81 P.3d 545. If the defendant interfered in some way with the plaintiff's contract, "[t]he inquiry, in the end, should be to determine the [defendant's] primary motivation for the interference. If it was primarily improper, then the [defendant] has no privilege. If it was primarily proper, then liability should not attach." *Id.* ¶ 23.

{8} For purposes of its motion for summary judgment and this appeal, Century does not contest the first and second elements of Borrowers' claim. Century admits that the insurance product it sold to Franklin did not comport with the retail installment contracts and that this Court may assume that Franklin breached the retail installment contracts when it charged Borrowers for the coverages it had purchased. It does not appear that Century contests the fourth ele-

ment, that Borrowers suffered damages as a result of the breach. However, Century argues that it disproved the remaining elements of Borrowers' claim by establishing that it did not play an active and substantial role in causing the breach and that it did not induce the breach without justification or privilege because it did not act with improper motive or through improper means. We agree.

**Borrowers Did Not Introduce Evidence That Century Played an Active Role in Causing Borrowers to Lose the Protection of Their Contracts**

{9} Borrowers maintain that Century's active role in Franklin's breach of the retail installment contracts is evidenced by Century's failure to offer Franklin an insurance product that would comport with the insurance requirements of the retail installment contracts, despite Century's knowledge of those requirements. Borrowers submitted evidence that the only product Century offered to Franklin was for a longer term and had a lower deductible than required by the retail installment contracts, provided comprehensive rather than perils coverage, and provided for a less favorable refund of premiums. More important, according to Borrowers, Century induced Franklin to force-place and charge Borrowers for non-compliant coverage "by offering to shoulder the vast bulk of the burden [Franklin] would otherwise have to carry in developing and running" the follow-up system that Century contracted to provide for Franklin. The system identified borrowers who had not purchased insurance, sent notices to those borrowers that contained misrepresentations about the insurance required, and sent Franklin notices of premium add-ons once insurance was force-placed. Borrowers argue that this system was crucial to Franklin, which was a newly formed finance company that was unsophisticated in the area of force-placed insurance.

{10} We are not persuaded that this evidence suggests or gives rise to an inference that Century played an active role in inducing Franklin to breach its retail installment contracts with Borrowers. Our Supreme Court has stated that "[c]ontracting with a

party with knowledge of a prior inconsistent contract between that party and another is not according to the better view, the equivalent of inducement or persuasion." *Wolf v. Perry*, 65 N.M. 457, 461, 339 P.2d 679, 681 (1959); *see Gallup Elec. Light Co. v. Pacific Improvement Co.*, 16 N.M. 86, 96, 113 P. 848, 851 (1911) (quoting with approval a New Jersey case stating that "[i]t would ... be a difficult proposition to maintain that persons not parties to such a contract ... are liable to an injunction in equity, at the suit of the covenantee, restraining them from merely aiding or abetting the covenantee in the violation of this contract" (internal quotation marks and citation omitted)).

{11} In this case, even if Century knew that the master policies it offered to Franklin provided more extensive coverage than the retail installment contracts Franklin had with Borrowers, there is no evidence to suggest that Century induced Franklin to charge Borrowers a cost for the coverage over and above what the required coverage would have cost. Indeed, as Century points out, Franklin could buy insurance to protect its collateral even if the retail installment contracts did not require Borrowers to purchase any insurance. Century sold its product to Franklin, not to Borrowers. Borrowers admitted at the summary judgment hearing that "Franklin's a big boy, it can buy whatever it wants to buy when it wants to buy.... [T]he sale of this insurance, per se, didn't violate any [borrower's] rights, and that's been clear since the day we filed our complaint." Consequently, Franklin bought insurance to protect its interest in all collateral, and it could elect to pass along all, some, or none of its cost to its customers. The evidence does not suggest that Century had anything to do with this decision.

{12} The Restatement (Second) of Torts supports our view.

> One does not induce another to commit a breach of contract with a third person ... when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person.... For instance, B is under contract to sell certain goods to C. He offers to sell them to A,

who knows of the contract. A accepts the offer and receives the goods. A has not induced the breach and is not subject to liability[.]

Restatement (Second) of Torts § 766 cmt. n (1979). Consistent with this principle, an entity like Century may sell a product to a purchaser without incurring liability to a third party even if the entity knows that the product does not comport with the purchaser's contract with the third party.

{13} Borrowers make much of the evidence it introduced that contradicts the affidavits of Century's employees. While Century's employees attested that Century did not urge Franklin to select particular coverages when Franklin decided to purchase insurance from Century, Franklin denied that Century offered any choices in coverage. These contested facts are not material to the issue of inducement. Borrowers did not present any evidence suggesting that Century's failure to give Franklin choices in coverage induced Franklin to breach its retail installment contracts with Borrowers. Franklin could have declined to purchase insurance from Century or it could have elected not to pass along to Borrowers any cost that was inconsistent with the retail installment contracts. Franklin's choice in this regard does not impose liability on Century. The fact that Century—a stranger to the retail installment contracts—did not affirmatively prevent Franklin from breaching its contracts with Borrowers cannot be equated with inducing Franklin to breach.

{14} We are equally unpersuaded by Borrowers' argument that Century's offer to provide Franklin with follow-up services constituted inducement for Franklin's breach of the retail installment contracts. Again, we fail to see how Franklin's acceptance of Century's offer of a contract to provide follow-up services induced Franklin to breach its retail installment contracts with Borrowers. There is no evidence that Century made its offer contingent on Franklin's agreement to overcharge Borrowers for the insurance Franklin had already purchased from Century. Even if Franklin was unsophisticated in the area of force-placed insurance and somehow desperate to relieve itself of the burden of creating

a follow-up system, there is no evidence suggesting that Century was the only entity offering such services or that Century agreed to sell Franklin insurance only if Franklin also agreed to purchase those services. Century simply offered a product that Franklin chose to buy.

**Borrowers Did Not Introduce Evidence That Century Induced the Breach of Contract With Either an Improper Motive or Improper Means**

{15} Even if Century's actions somehow influenced Franklin's handling of the retail installment contracts, Borrowers did not introduce any evidence suggesting that Century had any improper motive when it sold insurance and follow-up services to Franklin. Century employees attested that "[Century]'s sole motivation was to sell coverages and insurance follow-up services requested by [Franklin], and hopefully to earn a profit to [Century]." The desire to earn a profit is not an improper motive. *Cf. Williams v. Ashcraft*, 72 N.M. 120, 122, 381 P.2d 55, 56–57 (1963) (explaining that interference with a contract that is motivated by financial self-interest is not actionable).

{16} Borrowers contend that Century's offer of follow-up services, which included form notices that contained misrepresentations of the retail installment contracts' terms, constituted improper means that induced Franklin to breach the retail installment contracts. We disagree.

{17} It appears that Franklin was aware of the form notices' contents when it entered into the contract with Century for follow-up services because the contract apparently included all the forms that Century proposed to use. However, there is no evidence that Franklin was compelled to obtain follow-up services only from Century if Franklin did not approve of the form notices. In addition, Century did not induce Franklin to breach its contracts with Borrowers simply by agreeing to provide services with knowledge that the content of the notices did not comport with the retail installment contracts. Restatement (Second) of Torts § 766 cmt. n.

{18} Borrowers contend that Century's follow-up services "enabled [Franklin] to obtain more insurance protection and more profit than authorized under the [retail installment contracts], at the wrongful expense of . . . Borrowers. [Franklin] found this offer sufficiently economically attractive to induce its breach of its contracts[.]" Borrowers' argument is not persuasive. There is no evidence indicating that Century designed or offered its follow-up services in order to encourage greed or bad motives on Franklin's part. Moreover, Borrowers offer no authority for the proposition that Franklin's alleged improper motives can somehow be attributed to Century. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998–NMCA–078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (explaining that appellate court will not consider proposition in brief unsupported by citation to authority). In this connection, Borrowers' reliance on *Kenty v. Transamerica Premium Insurance Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863 (1995), is misplaced. That case was decided on a motion to dismiss, not summary judgment, and the borrowers' complaint's allegations mirrored the elements of the tort. *Id.* at 866. Once the court decided to recognize the cause of action for tortious interference with contract, it followed that the complaint stated a cause of action. *See id.*

{19} Finally, Borrowers argue that Century's offer of follow-up services was improper because it is similar to the following illustration in the Restatement (Second) of Torts:

A writes to B: "I know you are under contract to buy these goods from C. Therefore I offer you a special price way below my cost. If you accept this offer, you can break your contract with C, pay him something in settlement and still make money. I am confident that you will find it more satisfactory to deal with me than with C." As a result of this letter, B breaks his contract with C. A has induced the breach.

Restatement (Second) of Torts § 766 cmt. m, illus. 3 (1979). We fail to see the relevance of this example. There is no evidence that Century expressly suggested to Franklin that it breach its contracts with Borrowers in order to make more money and give an advantage to Century at the same time. In fact, Century did not stand to gain any advantage by Franklin's breach of the retail

installment contracts. Century had already sold Franklin an insurance policy, and there is no evidence that Century's compensation would have been different if Franklin either did or did not breach the retail installment contracts.

{20} Moreover, the same comment m to Section 766 of the Restatement states that "A's freedom to conduct his business in the usual manner, to advertise his goods, to extol their qualities, to fix their prices and to sell them is not restricted by the fact that B has agreed to buy similar goods from C. Even though A knows of B's contract with C, he may nevertheless ... solicit business in normal course. This conduct does not constitute inducement of breach of the contract." Similarly, Century could offer its follow-up services agreement in the normal course of its business and extol its virtues without being guilty of inducing Franklin to breach its contracts with Borrowers. Even if Century's misrepresentations to Borrowers do amount to improper means, there is no showing that these activities induced any breach of contract. They were made after Franklin's decision to engage in the conduct that amounted to its breach of contract.

**CONCLUSION**

{21} Borrowers failed to present evidence rebutting Century's prima facie showing that it did not induce breach of Franklin's retail installment contracts with Borrowers. Any issues of fact are not material, and the district court properly granted Century summary judgment.

{22} **IT IS SO ORDERED.**

I CONCUR: LYNN PICKARD, Judge.

IRA ROBINSON, Judge (dissenting).

ROBINSON, Judge (dissenting).

{23} I would reverse the district court's grant of summary judgment in favor of Defendant Century–National Insurance Company.

{24} The majority opinion states on page 29, "The desire to earn a profit is not an improper motive." I don't disagree. But I do question Century's desire to force people to buy insurance coverage, in an amount greater than what they need, so that the insurance company can charge them a higher premium and make a greater profit. That would be an improper motive.

{25} I would hold that genuine issues of material fact exist as to whether Century intentionally interfered with retail installment contracts between Borrowers and Franklin Capital Corporation. I see an injustice in denying Borrowers their day in court with a summary judgment that should not have been granted.

{26} I respectfully dissent.