This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**KURT A. SOMMER, as Trustee of the**
**GARRETT FAMILY IRREVOCABLE TRUST,**

Petitioner-Appellee,

v.                                                      **No. A-1-CA-35753**

**JAMES SCOTT GARRETT,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Judge**

Comeau, Maldegen, Templeman & Indall, LLP
Larry D. Maldegen
Michael J. Moffett
Santa Fe, NM

for Appellee

Border Law Office
Dean E. Border
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**KIEHNE, Judge.**

{1}     James Scott Garrett (Scott[1]) appeals from a summary judgment order finding that he forfeited his interest in a family trust after he failed to repay a loan from the trust. Scott argues on appeal that the district court erred in granting summary judgment because there were disputed issues of material fact about whether he asked for a loan or distribution; that summary judgment was improper because the trustee failed to conduct a proper inquiry into whether Scott needed the loan; that the district court erred in holding that the loan made to Scott from the trust was a distribution of his beneficial interest in the trust; and that the district court erred in not requiring the trustee, who is an attorney, to inform Scott that New Mexico law allows a beneficiary to pay back a loan from his share of trust proceeds. We affirm the district court's ruling.

**BACKGROUND**

{2}     Betty S. Garrett and James E. "Gene" Garrett (Grantors) created an irrevocable life insurance trust (the Trust) for the benefit of their three children, Patrick Michael Garrett, Sharon Marie Garrett a/k/a Sharon Marie Moya, and Scott. A joint survivor

---

[1]Because many of the individuals referenced in this case have the same last name, we will refer to Appellant as "Scott" and his siblings by their first names.

life insurance policy[2] funded the Trust, which was to be distributed upon the death of both Grantors.

{3}     In 2000, while Grantors were still living and the Trust was not yet funded with the death benefit of the life insurance policy, Scott calculated that his one-third share of the cash value of the policy was $75,252.98. Scott contacted the trustee, Kurt Sommer (Trustee), with this information and sought to take this amount out of the Trust. The parties dispute whether Scott requested a distribution or a loan at this time. Trustee then contacted Grantors, who consented to allow the funds to be taken as a loan from the policy, knowing that Scott might never be able to pay the loan back, and would thus surrender his interest in the Trust. Trustee determined that the loan was in Scott's best interest after considering the discord within the family (the circumstances of which are not disclosed by the record), that the Trust income was not adequate to support Scott's lifestyle, that he was unaware of any other sources of income available to Scott, and that Grantors consented to the loan.

{4}     In August 2000, Scott signed a six-year Promissory Note (the Note) in exchange for $74,744.26, which was his share of the policy's cash value, minus the

---

[2]The parties refer to the policy as a "joint survivor life insurance policy." Though the parties do not explain what they mean by this, and the policy was not made part of the appellate record, we believe the parties are referring to "last-survivor life insurance," which is defined as "[l]ife insurance on two or more persons, payable after all the insureds have died." *Black's Law Dictionary* 1067 (10th ed. 2014).

amount of fees that Trustee incurred in preparing the Note. In the Note, Scott promised that he would make quarterly payments on the loan with interest. Scott also agreed that

> [i]f any quarterly installment due under this Note is not paid when due and remains unpaid after a date specified by a written notice from Holder to Borrower, the Borrower forfeits his interest in the Garrett Family Irrevocable Trust and the outstanding balance shall be treated as a distribution to him of his interest in the Trust.

{5} Scott did not make payments on the loan when they came due in November 2000 and February 2001. In March 2001, Trustee sent Scott a letter notifying him that he was in default on the loan and reminding him that if he did not make the required payments, he would forfeit his interest in the Trust and the loan would be treated as a distribution of his interest in the Trust. Scott still did not make any payments on the loan, although he received the notice of default. Approximately one year after receiving the notice of default, Scott received $300,000 for the purchase of his interest in a family partnership, but he did not use these funds to repay the loan. Later, in 2004, Scott filed a bankruptcy petition under Chapter 13, in which he stated that he did not have a contingent interest in any trust, and in which he did not list his debt from the Note, though he asserted that he simply forgot about the Trust when filling out the petition. After Scott took out the loan, Patrick and Sharon Marie used $155,820 of their own funds to pay the premiums on the policy from December 2007

4

to November 2013. Scott made no effort to help carry this burden, but stated he was never asked to contribute.

**{6}** Fifteen years after the Note was executed, and following the death of both Grantors, Trustee filed a petition to terminate the Trust, distribute it to Patrick and Sharon Marie, and approve his fees. At the time the petition was filed, the Trust was worth more than $2.4 million, which was the value of the policy's death benefit. Scott opposed the petition, arguing that he was still a beneficiary of the Trust, and that the Note violated the terms of the Trust, was illegal under New Mexico law, and defeated Grantors' intent. Scott also alleged that Trustee breached his fiduciary duties to him, but did not specify why he believed that Trustee had breached those duties.

**{7}** Trustee moved for summary judgment, arguing that he was authorized by the Trust Agreement to make the loan to Scott, that he did not breach any fiduciary duties in making the loan to Scott, and that distribution should be made to Patrick and Sharon Marie. Scott opposed the motion. After a hearing, the district court granted summary judgment in Trustee's favor, and found that Scott had already received his distribution from the Trust when he defaulted on the loan, and ordered that the Trust be distributed to Patrick and Sharon Marie and that Trustee be paid Trustee fees and legal fees. Scott appeals.

**DISCUSSION**

{8} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "We review issues of law de novo." *Id.* "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.*

**I.** **Scott was aware that the loan would be treated as a distribution on default, and did not demonstrate that Trustee's alleged failure to inquire into Scott's reasons for wanting the loan or his additional sources of income was material**

{9} Scott argues that summary judgment was improperly granted for several reasons. First, he offered evidence that he never requested a distribution, and argues that a genuine issue of material fact existed about whether the funds received by him were a loan or a distribution. Second, Scott argues that Trustee violated the terms of the Trust by not asking him why he wanted the loan and by not asking him whether

6

he had any additional funds or sources of income. Third, Scott argues that Trustee's reason for approving the loan was not one that the Trust authorized. We will review the record in the light most favorable to Scott. *See City of Albuquerque*, 2009-NMCA-081, ¶ 7.

{10} We first conclude that whether Scott initially requested a loan or a distribution is immaterial. The Promissory Note signed by Scott states that "[i]f any quarterly installment due under this Note is not paid when due and remains unpaid after a date specified by a written notice from Holder [Trustee] to Borrower [Scott], the Borrower forfeits his interest in the . . . Trust and the outstanding balance shall be treated as a distribution to him of his interest in the Trust." Regardless of what Scott requested when he initially sought to take out a loan, the Note informed him that the loan would be treated as a distribution of his interest in the Trust if he failed to repay it. Thus, Scott's first argument is without merit.

{11} Next, we address Scott's argument that there was a disputed issue of material fact about whether Trustee adequately considered Scott's need for a distribution. Section IV of the Trust Agreement details Trustee's power to make distributions during Grantors' lifetimes. Scott argues that Section IV(b), titled "Income Distributions[,]" and IV(c), titled "Distributions of Principal[,]" when read together, require "that . . . Trustee must make inquiry into whether such distributions under

7

either paragraph are 'necessary and appropriate to provide for [the beneficiaries'] health, education, maintenance and support in accordance with their station in life.' " Scott also points out that these provisions required Trustee to consider other sources of income available to a beneficiary before making a distribution. Scott argues that Trustee failed to comply with these duties because he "never inquired as to why [Scott] was requesting the loan nor did . . . Trustee inquire into the funds of [Scott] or sources of income of [Scott]."

{12}    But even if Trustee failed to ask why Scott wanted the loan, or failed to adequately consider Scott's additional sources of income as required by the Trust Agreement, Scott fails to explain how the result would have been any different if Trustee had fulfilled these obligations. Scott does not explain what his reasons were for desiring a loan, or argue that Trustee's decision to make the loan would have been different if he had been aware of those reasons. Scott does not argue that he had income that Trustee was unaware of, and even if Scott did have other funds, he has not explained why Trustee would have or should have made a different decision had he known about Scott's other sources of income. Thus, even if Scott demonstrated the existence of an issue of fact about whether Trustee fulfilled his obligation to inquire about Scott's reasons for desiring the loan and his other sources of income, the issue of fact is not material because Scott has not explained how Trustee's actions would

have been different had he fulfilled those obligations. *See Martin v. Franklin Capital Corp.*, 2008-NMCA-152, ¶ 6, 145 N.M. 179, 195 P.3d 24 ("An issue of fact is 'material' if the existence (or non-existence) of the fact is of consequence under the substantive rules of law governing the parties' dispute").

{13}    Finally, Scott argues that Trustee improperly relied on intra-family discord as a reason for making the loan, and that this was improper because the Trust did not authorize making a loan for such a reason. Scott mischaracterizes the reason that Trustee made the loan. Trustee testified via affidavit that he made the loan because he believed that it was in Scott's best interest, a reason specifically allowed by Section IV(c) of the Trust Agreement. In making that determination, Trustee took into account the intra-family discord, along with other considerations, such as that he was not aware of any other source of funds that Scott had, that the Trust income was not sufficient to sustain Scott's lifestyle, and that Grantors had consented to the distribution. Scott has cited no authority for the proposition that Trustee could not consider the apparent lack of good relations between Scott and other members of his family in determining that a loan was in Scott's best interest.

**II.    Trustee had the authority to make the loan according to the terms of the Trust**

{14}    Scott argues that Trustee did not have the authority to make the loan because the Trust Agreement does not specifically grant Trustee the power to loan money.

9

Having held that there are no genuine issues of material fact, we no longer view the appeal in the light most favorable to Scott in addressing the remaining questions of law, which we review de novo. *See City of Albuquerque*, 2009-NMCA-081, ¶ 7.

{15} We disagree with Scott's argument, because Section IV(c) of the Trust Agreement states that upon consideration of the beneficiary's best interests, and the adequacy of the Trust's income,

> . . . Trustee, in . . . Trustee's *absolute discretion* may supplement same out of the principal of each beneficiary's Trust to such extent *and in such manner* as . . . Trustee deems necessary or appropriate for such purposes. Distribution of the entire principal of each beneficiary's Trust is authorized if . . . Trustee determines such distribution to be in the best interest of the beneficiary thereof in accordance with the foregoing standard." (Emphasis added.)

We conclude that this broad language gave Trustee ample authority to make a loan to Scott, and reject Scott's argument to the contrary.

{16} In addition, Scott has failed to demonstrate how Trustee's decision to make a loan prejudiced him. Trustee, in exercising his absolute discretion, could have simply distributed Scott's share of the Trust's value to him in 2000. Instead, Trustee allowed Scott the opportunity to repay the money, and Scott agreed that failure to repay the loan would result in the forfeiture of his interest in the Trust. Trustee's decision to make a loan *benefitted* Scott by allowing him to enjoy his share of the Trust long before he was entitled to do so, while providing him with the opportunity to repay the

10

loan and thus retain his share of the Trust in the future. The lack of prejudice dooms Scott's claim. *See Kennedy*, 2000-NMSC-025, ¶ 26 ("An error is harmless unless the complaining party can show that it created prejudice.").

**III.     The Uniform Trust Code does not apply to Scott's loan**

{17}     Scott next argues that, under the New Mexico Uniform Trust Code (the Code), NMSA 1978, §§ 46A-1-101 to -11-1105 (2003, as amended through 2018), a trustee may not treat a loan as a distribution of a trust. Section 46A-8-816(R) provides that a trustee may "make loans out of trust property, including loans to a beneficiary on terms and conditions the trustee considers to be fair and reasonable under the circumstances, and the trustee has a lien on future distributions for repayment of those loans[.]" Scott argues that under this provision, the sole legal remedy when a beneficiary defaults on a loan from a trust is that the trust has a lien on future distributions. We note that Scott's argument assumes that Trustee did not have the authority under the Trust Agreement to make the loan, and thus had to derive his authority from the Code—a position we disagreed with above. To the extent that Scott argues that the Code applies to or supersedes Trustee's authority under the Trust Agreement, we disagree.

{18}     We need not decide whether the Code now dictates the exclusive remedy for a default on a loan taken from a trust, because we hold that the Code does not apply

to the loan in this case. The Code was not enacted until 2003, three years after the loan to Scott. *See* Section 46A-11-1104. While the Code applies to trusts that were created before its enactment, it does not affect a trustee's acts before the Code's effective date. *See* Section 46A-11-1104(A)(1) ("Except as otherwise provided . . . the . . . Code or the amendment applies to all trusts created before, on or after its effective date[.]"); Section 46A-11-1104(A)(5) (states that "an act done before the effective date of the . . . Code or any amendment to that code is not affected by the . . . Code or the amendment). The "acts" in this case were the loan that Scott took out in 2000, and his default in 2001. Accordingly, the Code does not apply to Scott's loan or the default, both of which occurred before the Code was enacted.

**IV.     The Restatement (Second) of Trusts does not require the loan to be treated as a distribution**

{19}     Scott argues in the alternative that this Court should follow commentary in the Restatement (Second) of Trusts, and apply the general rule that "[i]f the trustee makes an advance or loan of trust money to a beneficiary, the beneficiary's interest is subject to a charge for the repayment of the amount advanced or lent." Restatement (Second) of Trusts, Advance or Loan of Trust Money to One Beneficiary § 255 (1959). Scott correctly notes that New Mexico courts have cited the Restatement (Second) of Trusts favorably for other propositions of law. *See, e.g.*, *Miller v. Bank of Am.*, 2015-NMSC-022, ¶¶ 16-17, 352 P.3d 1162 (citing the Restatement (Second) of Trusts for the

12

proposition that trustees may not retain any personal profit from the administration of a trust, even if the profit does not arise from a breach of trust).

{20}     We note that the Restatement (Second) of Trusts is not a binding authority, and that, even if it were, the Restatement does not specifically *prohibit* a loan from being treated as a distribution if the loan is not repaid in the manner agreed upon. *See* Restatement (Second) of Trusts § 255; *see also Gabaldon v. Erisa Mortg. Co.*, 1999-NMSC-039, ¶ 27, 128 N.M. 84, 990 P.2d 197 ("As a matter of course, we emphasize that the Restatement is merely persuasive authority entitled to great weight that is not binding on this Court."). The commentary to Section 816 of the Uniform Trust Code —the section that New Mexico adopted as Section 46A-8-816—relies on the Restatement, and states that "[i]f the trustee requires security for the loan to the beneficiary, adequate security under this paragraph *may* consist of a charge on the beneficiary's interest in the trust." Unif. Trust Code § 816 cmt. (2000) (emphasis added) (citing Restatement (Second) of Trusts § 255). Thus, it appears that the Restatement and the Uniform Trust Code both contemplate that a loan to a beneficiary may be secured with a lien on future distributions, but do not limit a Trustee to doing so as the exclusive remedy for a beneficiary's default. Accordingly, we decline Scott's request to extrapolate from the Restatement a general rule that loans from a trust can never be treated as distributions upon default.

**V.  Scott's argument that trustee breached a duty to him is waived as undeveloped**

{21}     Scott argues that Trustee breached his fiduciary duty on two grounds. First, Scott argues that Trustee breached his fiduciary duty because he did not advise Scott to obtain independent counsel, or advise him that New Mexico law—which was not enacted until three years after the loan was made—allowed Scott to take a loan from the Trust while only allowing the Trust obtain a lien on any future distributions from the Trust to repay the loan. Next, Scott argues that "[i]t would be unconscionable and violate . . . Trustee's fiduciary duty in this case to terminate [Scott's] interest in the Trust, when the loan can be repaid from [Scott's] interest in the Trust." We hold that these arguments are waived because they are not adequately developed for our consideration.

{22}     As for Scott's first argument, he has not cited any authority that supports his argument that a trustee must advise a beneficiary that he may obtain a loan and that the sole method of repayment of the loan could be future distributions from the Trust. In a one-page argument, Scott asserts that under *Spencer v. Barber*, 2013-NMSC-010, ¶ 33, 299 P.3d 388, Trustee, as an attorney, had a duty to advise Scott to seek independent counsel and to advise him that he could have secured the loan with a lien on future distributions. But *Spencer* does not stand for the proposition that a trustee has a duty to advise a beneficiary of all of the potential options for repaying a loan

14

from trust principal when the trustee has the absolute discretion to make distributions from the trust. *Spencer* is a case about an attorney's duty to a statutory beneficiary of a wrongful death estate when the attorney represents the personal representative. "[C]ases are not authority for propositions not considered." *Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 (internal quotation marks and citation omitted). Scott cites no other authority, and develops no other argument, in support of his claim, and we therefore conclude that Scott has not adequately developed this argument for our consideration. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal.").

**{23}** Trustee also argues that Scott failed to preserve this argument, and in his reply brief Scott argued that he did raise this issue by sending a letter to the district court after the hearing on the summary judgment motion. On appeal, Scott moved for leave to supplement the record to include the letter he submitted to the district court. We deny the motion as moot, because even if the issue was preserved in the district court, the argument was not adequately developed for appellate review.

**{24}** As for Scott's second argument, that "[i]t would be unconscionable and violate . . . Trustee's fiduciary duty in this case to terminate [Scott's] interest in the Trust, when the loan can be repaid from [Scott's] interest in the Trust," we note that Scott

has again completely failed to cite any authority in support of the notion that this Court may use its equitable powers to override Trustee's authority under the terms of the Trust. We decline to do the work that Scott's counsel should have done. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2.

**VI.    Scott's remaining arguments are waived as undeveloped**

{25}    We decline to consider Scott's additional arguments on appeal. First, Scott advances a one-sentence argument Trustee was required to obtain an order from the district court to terminate Scott's interest in the Trust when Scott defaulted on the loan. Scott cites no authority supporting his argument that Trustee had to seek court approval to terminate Scott's interest under these circumstances, and thus we will not consider it. *See id.* Scott next argues that "the purpose of the Trust was to protect the beneficiary of the Trust, even from himself." Scott cites no authority that this is the purpose of trusts in general, or that this was the purpose of this particular Trust, and accordingly we decline to consider this argument. *See id.* Finally, Scott argues that "the only distribution was the cash value of the policy. The proceeds of the life insurance policy did not even exist until the death of the settlor," and thus Scott's entire interest could not be distributed before the death of Grantors. We decline to address this argument because it is unsupported by cited authority, it is raised on the last page of Scott's reply brief, and is undeveloped because it contains no argument

16

or legal analysis supporting the proposition that an interest in an irrevocable life insurance trust cannot be distributed before a beneficiary is entitled to collect the policy's death benefit. *See id*; *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."); *see also Wilcox v. N.M. Bd. Of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 15, 288 P.3d 902 (stating that we do not consider an appellant's arguments that were not raised in the brief in chief, unless such arguments are directed to new arguments or authorities in the answer brief).

**CONCLUSION**

{26}    For the foregoing reasons, we affirm the judgment of the district court.

{27}    **IT IS SO ORDERED.**

_____

**EMIL J. KIEHNE, Judge**

**WE CONCUR:**

_____

**J. MILES HANISEE, Judge**

_____

**DANIEL J. GALLEGOS, Judge**

17