This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39010**

**JANSEN DOWNS,**

Plaintiff-Appellant,

v.

**ELEANOR GOODEN,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Joshua A. Allison, District Court Judge**

Mescall Law Firm, P.C.
Thomas J. Mescall, II
Phillip Patrick Baca
Albuquerque, NM

for Appellant

Childress Law Firm, LLC
Ronald J. Childress
Urvashi Parkhani
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**YOHALEM, Judge.**

**{1}** Plaintiff Jansen Downs brought this loss of consortium action for compensatory and punitive damages against Defendant Eleanor Gooden, alleging that Defendant's negligence in turning left when oncoming traffic was approaching caused a deadly collision with motorcyclist Brandon Gray (Decedent), Plaintiff's fiancé. Plaintiff appeals a jury verdict in her favor, claiming that the district court erred by (1) granting summary

judgment to Defendant on Plaintiff's punitive damages claim, (2) excluding Defendant's prior inconsistent statements and admitting other irrelevant and prejudicial evidence, and (3) failing to give Plaintiff's proposed jury instruction on loss of consortium damages. Not persuaded that there was error by the district court, we affirm.

**BACKGROUND**

**{2}** We review the facts that formed the basis of the district court's decision granting Defendant's motion for summary judgment on punitive damages. Additional facts relevant to the remaining issues will be included in our analysis.

**{3}** On February 15, 2017, Defendant was driving south on Eubank Boulevard in Albuquerque, New Mexico. As she was making a left turn onto eastbound Snow Heights Boulevard, her vehicle collided with Decedent's motorcycle, which was traveling north on Eubank Boulevard. The collision occurred in the middle lane of a three-lane roadway approximately two to three seconds after Defendant entered the intersection. Defendant admitted that the light was green at the time she entered the intersection, though she later testified that the light might have been yellow. The police report stated that Decedent was pulled under Defendant's vehicle and dragged until Defendant's vehicle came to a stop seconds later on Snow Heights Boulevard, after striking another vehicle head on.

**{4}** A responding police officer at the scene of the accident noted that Defendant committed the following traffic offenses: disregarding a traffic signal, failing to yield right of way, and making an improper turn. An officer also testified that there was no evidence that Defendant used her brakes during the accident. Defendant told law enforcement that she was traveling five to ten miles per hour as she entered the intersection. She also admitted to law enforcement, however, that she tried to hurry when she saw the motorcycle approaching. However, in her deposition, Defendant testified that she was stopped in the intersection. It was undisputed the police report determined that Decedent was speeding and that both drivers contributed to the collision. Defendant acknowledged that there were differences between her statements but maintained those matters were not material to summary judgment.

**{5}** Based on the record, the district court granted summary judgment, dismissing Plaintiff's punitive damages claim. Plaintiff's claim for compensatory damages for loss of consortium proceeded to trial. The jury found both Defendant and Decedent acted negligently in causing Decedent's death, finding Decedent 51 percent negligent and Defendant 49 percent negligent. The jury awarded Plaintiff $25,000 in loss of consortium damages. The award was reduced to $12,250 to account for Decedent's comparative negligence. This appeal followed.

**DISCUSSION**

**I.      The District Court Properly Granted Partial Summary Judgment on Punitive Damages**

**{6}** Prior to trial, Defendant moved for partial summary judgment on punitive damages. Defendant claimed that the undisputed facts would not support a finding that Defendant's conduct was malicious, willful, reckless, wanton, fraudulent, or in bad faith. A finding of one of these culpable mental states is a requirement under New Mexico law for an award of punitive damages. *See Clay v. Ferrellgas, Inc.*, 1994-NMSC-080, ¶ 12, 118 N.M. 266, 881 P.2d 11 ("To be liable for punitive damages, a wrongdoer must have some culpable mental state, and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level." (citation omitted)).

**{7}** The district court concluded that the material facts were undisputed and supported summary judgment on punitive damages. We agree that the undisputed material facts in the record are not reasonably susceptible to an inference that Defendant acted with a culpable mental state. There was, therefore, no genuine issue of material fact for trial on Plaintiff's punitive damages claim.

## A.      Standard of Review

**{8}** In reviewing an appeal from an order granting summary judgment, we are required to determine if disputed issues of material fact require a trial on the merits. "An issue of fact is 'material' if the existence (or non-existence) of the fact is of consequence under the substantive rules of law governing the parties' dispute." *Martin v. Franklin Cap. Corp.*, 2008-NMCA-152, ¶ 6, 145 N.M. 179, 195 P.3d 24. Because proof of reckless disregard for the consequences of her actions, the culpable mental state argued by Plaintiff, is an essential element of Plaintiff's punitive damages claim, the question of Defendant's mental state is material. *See Clay*, 1994-NMSC-080, ¶ 12.

**{9}** We next look to whether the party opposing summary judgment, here Plaintiff, has introduced evidence into the summary judgment record sufficient to create a genuine dispute of fact—one that requires resolution at trial. "When the facts before the court are reasonably susceptible to different inferences, summary judgment is improper." *Blauwkamp v. Univ. of N.M. Hosp.*, 1992-NMCA-048, ¶ 34, 114 N.M. 228, 836 P.2d 1249. In determining whether the facts before the court are susceptible of different inferences, we give the nonmoving party the benefit of all reasonable doubts, drawing all inferences from the evidence in favor of a trial on the merits. *See id.* ¶ 10. If, however, "only the legal effect of the facts is presented for determination, then summary judgment may properly be granted." *Koenig v. Perez*, 1986-NMSC-066, ¶ 10, 104 N.M. 664, 726 P.2d 341.

## B.      The Undisputed Facts Are Not Reasonably Susceptible to an Inference That Defendant Acted Recklessly

**{10}** Plaintiff did not claim that facts were in dispute. Instead, Plaintiff argued that the undisputed facts are capable of supporting an inference that Defendant acted with reckless disregard for the consequences of her conduct. Plaintiff focused her argument in the district court and in her briefing on appeal on five inferences she claims are sufficient to allow a reasonable jury to conclude that Defendant's conduct was reckless:

(1) that Defendant turned left at a green light; (2) that the collision resulted in the motorcyclist's death; (3) that Defendant did not stop until her car hit another vehicle head on; (4) that Decedent's motorcycle was dragged under Defendant's car; and (5) that Defendant made contradictory statements about the color of the traffic light, her speed, and the distance to the motorcycle as she turned. Plaintiff argues that a reasonable jury could find that these facts create an inference that Defendant acted with utter indifference to the likely injury to Decedent.

**{11}** We do not agree that the inferences drawn by Plaintiff from the undisputed facts are reasonable. Although "[t]he line between speculation and reasonable inference is not always clear," "[a]n inference is more than a supposition or conjecture." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (internal quotation marks and citations omitted). "It is a logical deduction from facts which are proven, and guess work is not a substitute therefor." *Bowman v. Inc. Cnty. of Los Alamos*, 1985-NMCA-040, ¶ 9, 102 N.M. 660, 699 P.2d 133. "It is true that the plaintiff is entitled to resolution of all inferences in its favor but such inferences must be reasonably based on facts established by the evidence, not upon conjecture." *Slade*, 2014-NMCA-088, ¶ 14 (alterations, internal quotation marks, and citation omitted).

**{12}** In this case, Plaintiff suggests that a jury could conclude that Defendant's failure to brake creates an inference that she was both trying to flee the scene and drag the motorcyclist to his death; her admission that she hurried when she saw the motorcycle approaching creates an inference that she was speeding; that the changes in her testimony create an inference she was trying to cover up her misconduct; and that the extent of Decedent's injuries alone creates an inference of reckless conduct. There is no reasonable link between these facts and an intention to flee, purposely dragging Decedent to his death, or an intent to cover up the facts. Defendant waited for police officers to arrive on the scene, and no evidence suggests that Defendant was speeding or knew Decedent was trapped under the vehicle. A finding of an improper mental state cannot be made without speculation by the jury going far beyond the facts presented. We therefore agree with the district court that summary judgment was properly granted on Plaintiff's claim for punitive damages.

## II.     No Reversible Error Resulted From the District Court's Evidentiary Rulings

**{13}** Plaintiff argues that the district court committed reversible error through its evidentiary rulings. When preserved, "[w]e review [claimed errors in] a district court's decision to admit or exclude evidence for abuse of discretion." *Los Alamos Nat'l Bank v. Velasquez*, 2019-NMCA-040, ¶ 12, 446 P.3d 1220 (internal quotation marks and citation omitted). "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *State v. Branch*, 2018-NMCA-031, ¶ 36, 417 P.3d 1141 (internal quotation marks and citation omitted).

**{14}** In addition to showing an abuse of discretion by the district court in a ruling admitting or excluding evidence, the appellant must also make a showing of prejudice. "[I]n the absence of prejudice, there is no reversible error." *Deaton v. Gutierrez*, 2004-

NMCA-043, ¶ 31, 135 N.M. 423, 89 P.3d 672 (internal quotation marks and citation omitted).

## A. Evidence of Defendant's Contradictory Statements Made to Her Insurance Carrier

{15} Plaintiff first contends that the district court committed reversible error by not allowing Plaintiff to introduce into evidence an insurance adjustor's notes of an interview of Defendant two days after the collision.

{16} Prior to trial, in a motion in limine, Plaintiff moved for leave to introduce the insurance adjustor's notes summarizing the interview of Defendant. The district court denied Plaintiff's motion but agreed to revisit the admissibility of the adjustor's notes if at trial Defendant contradicted the statements she made to the adjustor.

{17} At trial, the district court allowed Plaintiff's counsel to cross-examine Defendant about the statements she had made to the adjustor without identifying the interviewer as an insurance adjustor. Identifying the adjustor simply as an "investigator," Plaintiff questioned Defendant about two statements she made to the adjustor: (1) that she was in the left-hand turn bay when she first saw Decedent, rather than already crossing the intersection, as she testified in her deposition; and (2) that Decedent's motorcycle was only 50 feet from the intersection when she began her left turn, rather than 150 to 175 feet away, as she testified in her deposition. Defendant claimed she did not remember making these statements to the adjustor.

{18} Plaintiff then approached the bench and asked the district court to allow Plaintiff to introduce the adjustor's notes of Defendant's interview into evidence. The district court refused to allow the interview to be introduced on the basis that identifying Defendant's statements as made during an investigation by her insurance carrier would be prejudicial. Specifically, the district court was concerned that "it would be unfairly prejudicial to suggest to the jury that" Defendant had coverage when she did not, based on earlier rulings by the district court.

{19} It is within the sound discretion of the district court to weigh the probative value of impeachment testimony versus the possible prejudice from disclosure of insurance coverage. *Mac Tyres, Inc. v. Vigil*, 1979-NMSC-010, ¶ 12, 92 N.M. 446, 589 P.2d 1037. We cannot say that the district court's ruling was clearly contrary to logic and the facts and circumstances of the case. The court allowed Plaintiff to impeach Defendant with her contrary statements on cross-examination, while excluding the interview as a whole to protect from disclosure prejudicial information that would mislead the jury into thinking Defendant had insurance coverage. *See State v. Davis*, 1981-NMSC-131, ¶¶ 17-20, 97 N.M. 130, 637 P.2d 561 (holding that the district court did not abuse its discretion by excluding extrinsic evidence of a prior inconsistent statement when the defense attorney had cross-examined the witness about the statement and argued the inconsistencies to the jury during closing arguments). We cannot say that the decision to exclude the insurance adjustor's notes was an abuse of discretion. *Talley v. Talley*, 1993-NMCA-

003, ¶ 12, 115 N.M. 89, 847 P.2d 323 ("When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion.").

**{20}**   Plaintiff has further failed to meet her burden of demonstrating how she was prejudiced by the district court's ruling given her cross-examination of Defendant on the very same issues. *See Deaton*, 2004-NMCA-043, ¶ 31 ("[A]n assertion of prejudice is not a showing of prejudice, and in the absence of prejudice, there is no reversible error." (alteration, internal quotation marks, and citation omitted)).

## B.      Evidence of Decedent's Aggressive Driving Just Before the Collision

**{21}**   Plaintiff next contends that the district court should not have admitted evidence that Decedent was observed at the last stoplight on Eubank before the collision driving "aggressively."

**{22}**   A driver who saw Decedent stopped at a red light one-third of a mile before the collision testified that, when the light turned green, Decedent accelerated very fast, and then, part way through the intersection, "pulled a wheelie" lifting the motorcycle's front wheel into the air. The witness testified that he estimated Decedent accelerated to forty-five or fifty miles per hour as he left the stop light.

**{23}**   Plaintiff argues that the driver's testimony describing the wheelie and characterizing Decedent's driving as "aggressive" was irrelevant because it was not sufficiently linked to the collision one-third of a mile later, or, alternatively, its probative value was substantially outweighed by undue prejudice under Rule 11-403 NMRA. The district court admitted the evidence, finding the evidence probative of whether Decedent was driving negligently and whether that negligence was a contributing cause of the collision.

**{24}**   In this case, it is undisputed that the jury was required to determine the extent to which Decedent's speeding or other negligent driving contributed to the collision. The district court could reasonably conclude from the evidence that Decedent's aggressive driving only one-third of a mile before the collision was causally connected to the collision. Unlike the out-of-state cases cited by Plaintiff, where the cause of a later traffic accident was unrelated to prior observations of a party's driving, the speed and aggressiveness of Decedent's driving was close in time and proximity to the collision and was of a similar character to the negligence alleged to have contributed to the collision. *See Corum v. Comer*, 123 S.E.2d 473, 474-75 (N.C. 1962) (determining that evidence of racing was irrelevant when it occurred twenty minutes before a collision where the collision was caused by following too closely); *McGuire v. Navarro*, 332 P.2d 361, 363 (Cal. Dist. Ct. App. 1958) (concluding that the district court did not abuse its discretion in excluding evidence of "cutting in" a mile and half to two miles before the collision that was caused by speeding); *Harter v. King*, 259 S.W.2d 94, 95-96 (Mo. Ct. App. 1953) (holding that evidence of earlier speeding "did not prove or tend to prove whether [the] plaintiff collided with [the] defendant or [the] defendant turned into [the] plaintiff miles away two hours later"); *Hutteball v. Montgomery*, 60 P.2d 679, 680 (Wash.

1936) (determining that the earlier speed of the vehicle was irrelevant when "the position and path of the cars . . . caused the collision . . . rather than the excessive speed"). *But see Eads v. Stockdale*, 220 S.W.2d 971, 973 (Ky. 1949) (explaining that evidence of the speed of a vehicle three hundred yards before a collision was irrelevant). There was therefore no abuse of discretion in admitting evidence of Decedent's aggressive driving.

**{25}** The district court also did not abuse its discretion in finding that this evidence was not unfairly prejudicial. Rule 11-403 does not guard against any prejudice whatsoever, but only against unfair prejudice. *State v. Otto*, 2007-NMSC-012, ¶ 16, 141 N.M. 443, 157 P.3d 8. "Evidence is unfairly prejudicial if it is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *State v. Bailey*, 2017-NMSC-001, ¶ 16, 386 P.3d 1007 (internal quotation marks and citation omitted). We give "much leeway . . . [to] trial judges who must fairly weigh probative value against probable dangers." *Id.* (internal quotation marks and citation omitted). The evidence of Decedent's prior driving is neither sensational nor shocking. Plaintiff does not explain how this evidence would lead the jury to decide the facts based on hostility or emotion rather than reason—apart from referring to "deep-seated prejudices against motorcyclists" and speculating that the jury impermissibly concluded Decedent was a "menace." *See Valerio v. San Mateo Enters.*, 2017-NMCA-059, ¶ 16, 400 P.3d 275 (explaining that although "[w]e compel the reversal of errors for which the complaining party provides the slightest evidence of prejudice and resolve all doubt in favor of the complaining party[,] . . . we will not set aside a judgment based on mere speculation that the error influenced the outcome of the case" (alteration, internal quotation marks, and citation omitted)). We cannot say in this case that the there was an abuse of discretion by the district court in concluding that this evidence had significant probative value, which was not outweighed by any unfair prejudice.

## C.    Admission of a Picture Into Evidence and the District Court's Refusal to Allow Rebuttal

**{26}** Plaintiff's final evidentiary contention is that reversible error occurred when the district court admitted a photograph into evidence and did not allow Plaintiff to introduce rebuttal evidence. At trial, during the cross-examination of Plaintiff, Defendant introduced, and the court admitted into evidence, a photograph that Plaintiff posted on social media on May 12, 2017, her intended wedding date to Decedent. The photograph shows Plaintiff smiling and seated close to a man and woman on a couch, and the man has an arm around Plaintiff's shoulder. On appeal, Plaintiff argues that the photograph had a prejudicial impact because the jury would assume that the man in the photograph was Plaintiff's boyfriend, and it was error to not allow her to explain to the jury that the woman was her cousin and the man was her cousin's boyfriend. Plaintiff argues that the picture falsely suggested to the jury that Plaintiff was romantically involved with another man only months after the death of her fiancé.

**{27}** Plaintiff's characterization of the district court's ruling and the court's basis for that ruling is misleading. The district court had granted Plaintiff's pretrial request to exclude evidence of Plaintiff's post-accident relationship and marriage, and when Defendant sought to introduce the photograph at trial, the district court maintained that position to "keep out all evidence of [her] subsequent relationship" with a new fiancé. The court agreed to admit one of three photographs showing Plaintiff happily engaged with relatives and friends near the date set for her wedding with Decedent, finding such a photograph relevant to Plaintiff's claim for loss of consortium damages. The district court limited the testimony concerning the photograph to the date that the picture was posted. The jury was briefly shown the photograph by Defendant and told the date the photograph was posted. The court, in an attempt to prevent questions by Defendant about Plaintiff's relationships, then refused to allow Plaintiff to cross-examine the witness about the identity of the man and woman in the photograph and quickly withdrew the photograph from the jury's view.

**{28}** The admission of a single photograph showing Plaintiff happily in the arms of friends was relevant to Plaintiff's loss of consortium claim and, as limited by the trial court, did not disclose her subsequent romantic relationship. Plaintiff prevailed in having all evidence disclosing the subsequent romantic relationship excluded from consideration by the jury. We will not second guess the determination of the district court to admit this photograph, while limiting the attention devoted to it at trial and its impact on the jury. Nor do we find it unreasonable for the district court to conclude that allowing Plaintiff to present rebuttal evidence denying a romantic relationship with the man in that picture, while her romantic relationship with another was not disclosed to the jury, might affirmatively mislead the jury. We see no abuse of discretion in the district court's handling of this difficult and potentially prejudicial evidence.

### III. The District Court Did Not Fail to Properly Instruct the Jury on Damages for Loss of Consortium

**{29}** Plaintiff contends that the district court erred in refusing to supplement the Uniform Jury Instruction on loss of consortium damages, UJI 13-1810B NMRA, by including an additional description of loss of consortium damages proposed by Plaintiff. UJI 13-1810B describes loss of consortium damages as "the harm suffered from the loss of [Plaintiff's] relationship with [Decedent]" and Plaintiff asked the district court to add the following language: "The harm includes such intangibles as loss of love, care, society, guidance, companionship provided by the relationship." Plaintiff's argument on appeal is that the standard UJI does not adequately describe the specific harm compensable as loss of consortium. Plaintiff claims she is entitled to her requested jury instruction because it more accurately reflects New Mexico case law.

**{30}** Our Rules of Civil Procedure allow the district court to deviate from a UJI only if "under the facts or circumstances of the particular case the published UJI Civil is erroneous or otherwise improper, and the [district] court so finds and states [on the] record its reasons." Rule 1-051(D) NMRA. Because UJI 13-1810B plainly applies to loss of consortium damages, Plaintiff must establish that UJI 13-1810B "improperly

characterized the law of this [s]tate as it applied to the facts of this case" and that it "was necessary and proper for the trial judge to modify the [UJI]." *Brooks v. K-Mart Corp.*, 1998-NMSC-028, ¶ 7, 125 N.M. 537, 964 P.2d 98.

**{31}** Plaintiff presents no argument or authority showing that UJI 13-1810B is in any way an improper or erroneous statement of New Mexico law. The instruction is consistent with the decision of our Supreme Court defining loss of consortium damages in *Thompson v. City of Albuquerque*, as "damages for the plaintiff's emotional distress due to the harm to a sufficiently close relationship." 2017-NMSC-021, ¶ 8, 397 P.3d 1279 (internal quotation marks and citation omitted).

**{32}** We note that the district court did not prevent Plaintiff's counsel from arguing to the jury that loss of consortium damages include loss of care, comfort, protection, companionship, and love. We therefore fail to see any prejudice from the court's refusal to add Plaintiff's additional language to the instruction. *See Brooks*, 1998-NMSC-028, ¶ 7 (holding that any error not causing prejudice to the substantial rights of a party shall be disregarded). We therefore conclude that the jury was properly instructed on loss of consortium damages.

**CONCLUSION**

**{33}** For the foregoing reasons, we affirm.

**{34}  IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**KATHERINE A. WRAY, Judge**