This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**PRISCILLA THREADGILL, Individually and as Personal Representative of the ESTATE OF JOSEPH THREADGILL, DAVID THREADGILL, and DANIELLE THREADGILL,**

Plaintiffs-Appellants,

v.                                                              **NO. A-1-CA-34785**

**6001, INC. d/b/a TD'S NORTH,**

Defendant-Appellee,

and

**THOMAS HANCOCK; NC PROPERTIES, LLC; and HTR, LLC,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**James Lawrence Sanchez, District Judge**

Archibeque Law Firm, LLC
Ronald C. Archibeque
Albuquerque, NM

Youtz & Valdez, P.C.
Gabrielle M. Valdez
Albuquerque, NM

Law Offices of Dave Houliston
David H. Houliston
Albuquerque, NM

for Appellants
DeLara Supik Odegard P.C.
Christopher DeLara
David C. Odegard
Albuquerque, NM

Saucedo Chavez, P.C.
Christopher T. Saucedo
Daniel Apodaca
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Chief Judge.**

{1}     Plaintiffs, Priscilla Threadgill, individually and as personal representative of the Wrongful Death Estate of Joseph Threadgill, David Threadgill, and Danielle Threadgill, appeal the district court's rulings granting summary judgment in favor of Defendant 6001, Inc. d/b/a TD's North (TD's). The district court granted TD's motion on Plaintiffs' *Delgado* claim and, subsequently, on their claim for spoliation of evidence. We affirm.

**BACKGROUND**

**Factual Background**

{2} The undisputed facts are as follows. On August 27, 2011, Joseph Threadgill was working as a doorman or "bouncer" for TD's when he was shot and killed by Defendant Thomas Hancock. Hancock had been a customer at TD's that night and had struck another customer while inside. Hancock attempted to strike a doorman who restrained Hancock and was removing him from the club. The doorman got Hancock outside and seated him on a bench. Shortly thereafter, Hancock was attacked by men involved in the previous altercation that took place inside the club. TD's doormen intervened and successfully persuaded the attackers to leave the premises.

{3} Hancock appeared to be "in no condition to drive," so the doormen arranged to call a cab to take Hancock home and agreed that Threadgill would wait with Hancock until the cab arrived. Threadgill, along with the doormen, the bartenders, and the manager, were able to communicate with each other via a radio communication system that included headsets, audio ear pieces, microphones, and a walkie talkie at the bar. Thus, a doorman who observed a problem or needed help could use the communication system. Threadgill did not ask for any help while he was alone outside with Hancock.

{4} At some point while he was outside with Hancock, Threadgill told Larry Saunders, a doorman with about fifteen years of experience as a bouncer but who was not employed by TD's, that he was going to walk Hancock to his car. Saunders then heard a loud noise and saw gunfire. Threadgill had been shot in the parking lot. The

3

shots fired by Hancock took everyone—the TD's doormen, manager on duty, and Saunders—by surprise.

**{5}** We discuss other material facts as necessary in our discussion below.

**Procedural History**

**{6}** Plaintiffs' lawsuit included several claims, including one for wrongful death against TD's pursuant to the doctrine set forth in *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148. Plaintiffs alleged that this case fits within the willful-employer exception to the exclusivity provision of the Workers' Compensation Act (the Act), NMSA 1978, § 52-1-9 (1973), because TD's "knew or should have known that its actions and omissions would almost certainly result in serious injury or death." After extensive discovery, TD's filed a motion for summary judgment on the *Delgado* claim, which the district court granted. Rejecting Plaintiffs' argument that the police should have been called after Hancock attempted to strike the doorman who was escorting him out of the club, the court concluded that Plaintiffs had not raised "a question of fact that there is an omission that reaches the level of egregiousness that we see in *Delgado*."

**{7}** After the district court granted TD's summary judgment motion on Plaintiffs' *Delgado* claim, the court allowed Plaintiffs to file an amended complaint adding a claim of intentional spoliation of evidence against TD's, among others. The spoliation claim, filed pursuant to *Coleman v. Eddy Potash, Inc.*, 1995-NMSC-063, 120 N.M.

4

645, 905 P.2d 185, *overruled on other grounds by Delgado*, 2001-NMSC-034, ¶ 23 n.3, alleged that TD's "destroyed or disposed of evidence relevant and material to the claims raised in this lawsuit including an incident report on the death of Plaintiffs' Decedent, Joseph Threadgill, and managers' log books of incidents at the establishment of [TD's.]"

{8}     After the parties conducted additional discovery, TD's filed a motion for summary judgment on Plaintiffs' spoliation claim setting forth four "undisputed material facts" including that TD's did not keep logs on August 27, 2011; that any logs it once kept were discarded well before that date; and that there was no potential lawsuit—nor did Defendant have knowledge of one—at the time it decided to discard old logs and cease keeping any form of managers' logs.

{9}     TD's undisputed facts relied on the testimony and affidavits of two former doormen at TD's, a former general manager, and the owner and president of the company. Bonnie D'Angelo, a former general manager stated that a managers' logbook was used at one time to document incidents regarding dancers, but not for incidents in the parking lot, violent altercations, or shootings. Although the logbook was in existence around 2005, D'Angelo was unsure whether the logbook was in existence at the time of Threadgill's death. Bolivar Carlos Rubio stated that he saw a logbook until the end of his employment with TD's in April 2011 and did not know if one existed in August 2011. The owner and president of TD's, Frank Zanzucchi,

5

filed an affidavit stating that on the advice of corporate counsel, TD's "stopped the practice of keeping manager logs and notes and discarded the logs and notes" prior to August 27, 2011. Finally, Bradley Hembree, a former doorman, testified that he was not aware of the managers keeping a written log. Both Hembree and D'Angelo also testified that a doorman's log was not in existence at the time of Threadgill's death and was not kept until 2012.

{10}     Plaintiffs responded that TD's failed to make a prima facie case that the managers' logbook was destroyed prior to the August 2011 shooting incident or that the logbook was destroyed for business reasons. They also argued that they were not required to prove causation and the inability to win the lawsuit at the summary judgment stage. The district court granted TD's motion on the basis "that there is no required underlying claim remaining in this case due to the dismissal of . . . Plaintiffs' *Delgado* claim against [TD's.]" This appeal followed.

**DISCUSSION**

**Standard of Review**

{11}     We review an order granting summary judgment de novo. *Beggs v. City of Portales*, 2009-NMSC-023, ¶ 10, 146 N.M. 372, 210 P.3d 798. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

6

law." Rule 1-056(C) NMRA. If the movant establishes a prima facie case that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law, "the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted); *see Goodman v. Brock*, 1972-NMSC-043, ¶¶ 8-9, 83 N.M. 789, 498 P.2d 676. This burden cannot be met with allegations or speculation, but only with admissible evidence demonstrating a genuine fact issue requiring trial. *See* Rule 1-056(C), (E); *Schmidt v. St. Joseph's Hosp.*, 1987-NMCA-046, ¶ 5, 105 N.M. 681, 736 P.2d 135. Claimed disputed facts "cannot serve as a basis for denying summary judgment" if the evidence adduced is insufficient to support "reasonable inferences." *Romero*, 2010-NMSC-035, ¶ 10; *see id.* ("An inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guess work is not a substitute therefor." (internal quotation marks and citation omitted)).

***Delgado* Claim**

{12}    In *Delgado*, our Supreme Court held that the exclusivity provision of the Act does not apply "when an employer intentionally inflicts or willfully causes a worker to suffer an injury." 2001-NMSC-034, ¶ 24. Such a narrow exception arises only when the following three requirements are satisfied:

> (1) the worker or employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury.

*Id.* ¶ 26.

{13}   To survive summary judgment, a plaintiff must "present evidence that the employer met each of the three *Delgado* elements through actions that exemplify a comparable degree of egregiousness as the employer in *Delgado*." *Morales v. Reynolds*, 2004-NMCA-098, ¶ 14, 136 N.M. 280, 97 P.3d 612. Those actions involve: "a combination of deadly conditions, profit-motivated disregard for easily implemented safety measures, complete lack of worker training or preparation, and outright denial of assistance to a worker in a terrifying situation." *Id.* ¶ 10. In other words, the "critical measure" is whether the employer forced the employee to perform a task in a specific dangerous circumstance in which the employer should have been clearly aware of a substantial likelihood of injury or death. *Dominguez v. Perovich Props., Inc.*, 2005-NMCA-050, ¶ 22, 137 N.M. 401, 111 P.3d 721.

{14}   In addition to the undisputed facts set forth in the background section above, TD's summary judgment record established the following. Threadgill was performing routine tasks of an outside doorman on August 27, 2011, including the task of dealing with the situation involving Hancock. No one who was there that night called the

8

police, and only one person thought about doing so. Moreover, although the doormen, bartenders, and manager were able to communicate with each other via a radio communication system, Threadgill never asked for help with Hancock or said he was afraid to be outside with him. Threadgill and other TD's doormen had previously received some training, including being told by the manager, David Graham, that they should not walk or follow customers to their cars after an altercation. Shortly before the shooting, David Hawrey, another doorman at TD's that night, told Threadgill not to walk Hancock to his car. No one heard Hancock threaten Threadgill; and several employees testified that they did not know that Hancock had a gun in his car, or that Hancock had threatened to use a gun.

{15} In the summary judgment proceedings below, Plaintiffs denied the above contentions but fail to create a genuine issue of material fact to show that "in a specific dangerous circumstance, [TD's] required [Threadgill] to perform a task where the employer is or should clearly be aware that there is a substantial likelihood the employee will suffer injury or death by performing the task." *Dominguez*, 2005-NMCA-050, ¶ 22. While they offer evidence that at least one bouncer thought about and wanted to call the police, that some managers told bouncers that they were not permitted to call the police, and that one manager admitted to a former employee that he overheard Hancock tell the men he was fighting with that he had a gun, these facts are insufficient to survive summary judgment.

9

{16} The evidence on which Plaintiff relies fails to establish that TD's conduct rose to a level of egregiousness comparable to that of the employer in *Delgado*. There is no evidence that anyone associated with TD's believed that, at the time Threadgill was waiting with Hancock on the bench, the situation was dangerous and wanted to call the police but did not do so. To the contrary, the customers involved in the altercation with Hancock outside had left, and Hancock no longer appeared to be aggressive. Importantly, there is no evidence that anyone from TD's ordered Threadgill to follow Hancock to the car. Threadgill's death is tragic. But the record is devoid of any evidence that, at the time Threadgill was shot, police needed to be called or that Threadgill was in a dangerous situation, as the altercation had ended, the men who had attacked Hancock had left, and Hancock was quietly waiting for his cab to arrive. Unlike the situation in *Delgado*, where the employer ordered the worker into a molten inferno despite the worker's protestations, 2001-NMSC-034, ¶¶ 4-5, it was Threadgill's own choice to follow Hancock to his car. Even assuming TD's had "an extensive history of violence" over a ten-year period as Plaintiffs assert, Plaintiffs cited no evidence that TD's intended to send Threadgill into harm's way on the night of his death.

{17} Plaintiffs appear to argue that the district court erred by failing to consider the "totality of TD's conduct," which they claim shows that TD's knew or should have known that there was substantial certainty that one of its bouncers would be injured

10

or killed. We have said repeatedly, however, that "[t]o reach the *Delgado* exception, it is critical that the employer has, '*in a specific dangerous circumstance*, required the employee to perform a task where the employer is or should clearly be aware that there is a substantial likelihood the employee will suffer injury or death by performing the task.'" *May v. DCP Midstream, L.P.*, 2010-NMCA-087, ¶ 13, 148 N.M. 595, 241 P.3d 193 (quoting *Dominguez*, 2005-NMCA-050, ¶ 22). Plaintiffs provide no reason to depart from this established law and we have found none. We affirm the district court's entry of summary judgment on the *Delgado* claim.

**Intentional Spoliation of Evidence**

{18}    In *Coleman*, our Supreme Court stated that in order to prevail on a claim for intentional spoliation of evidence, a plaintiff must allege and prove the following elements:

> (1) the existence of a potential lawsuit; (2) the defendant's knowledge of the potential lawsuit; (3) the destruction, mutilation, or significant alteration of potential evidence; (4) intent on part of the defendant to disrupt or defeat the lawsuit; (5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and (6) damages.

1995-NMSC-063, ¶ 13.

{19}    The district court granted TD's motion for summary judgment on Plaintiffs' spoliation of evidence claim on the ground that there was no required underlying claim remaining in the case. Plaintiffs argue on appeal that the destroyed logbooks "would have established [TD's] corporate indifference and actual knowledge that it

11

was placing its bouncers in an environment of substantial likelihood of injury or death." But information in logbooks concerning prior incidents at TD's are not evidence that TD's "*in a specific dangerous circumstance*, required [Threadgill] to perform a task" while knowing that there was "a substantial likelihood" that Threadgill would "suffer injury or death by performing the task." *May*, 2010-NMCA-087, ¶ 13 (internal quotation marks and citation omitted); *see also Delgado*, 2001-NMSC-034, ¶ 24 (requiring a plaintiff to prove that the employer "willfully cause[d] a worker to suffer an injury"). Accordingly, even if Plaintiffs had proffered evidence sufficient to establish all the other required elements of the tort of spoliation, they could not show that destruction of logbooks rendered them unable to prove a *Delgado* claim, i.e., "a causal relationship between the act of spoliation and the inability to prove the lawsuit[.]" *Coleman*, 1995-NMSC-063, ¶ 13.

{20}    Plaintiffs' argument that TD's failed to make a prima facie case that the managers' logbook was destroyed prior to Threadgill's death or that it was not destroyed for business reasons is unavailing. Given our conclusion that logbook information concerning prior incidents at TD's would not have shown what *Delgado* requires, issues concerning whether and when logbooks were destroyed and for what reason are immaterial and therefore insufficient to defeat summary judgment. *See Freeman v. Fairchild*, 2018-NMSC-023, ¶ 33, 416 P.3d 264 ("To determine whether a party has made a prima facie showing of entitlement to summary judgment, the court

12

must look to the substantive law governing the dispute." (internal quotation marks and citation omitted)); *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-005, ¶ 24, 126 N.M. 788, 975 P.2d 841 (explaining that disputed facts "do not preclude summary judgment without a showing that they are material"); *Martin v. Franklin Capital Corp.*, 2008-NMCA-152, ¶ 6, 145 N.M. 179, 195 P.3d 24 ("An issue of fact is 'material' if the existence (or non-existence) of the fact is of consequence under the substantive rules of law governing the parties' dispute.").

{21} Also unavailing are Plaintiffs' contentions that "an inference exists that TD's destroyed the logbook with knowledge of potential lawsuit" and that the logbook could have been destroyed after the shooting "for non-business reasons." As a preliminary matter, claimed disputed facts "cannot serve as a basis for denying summary judgment" if the evidence adduced is sufficient to support "reasonable inferences." *Romero*, 2010-NMSC-035, ¶ 10; *see id.* (stating that "[a]n inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guess work is not a substitute therefor" (internal quotation marks and citation omitted)). "A dispute as to facts that are not material does not preclude summary judgment, and summary judgment is proper although disputed factual issues remain." *Kreutzer v. Aldo Leopold High Sch.*, 2018-NMCA-005, ¶ 29, 409 P.3d 930 (alteration, internal quotation marks, and citation omitted).

{22} TD's met its burden of presenting a prima facie case of entitlement to judgment as a matter of law, and the district court properly granted summary judgment in TD's favor upon Plaintiffs' failure to show a genuine issue of material fact that a specific dangerous circumstance existed as Threadgill waited with Hancock for his cab to arrive and that in that specific dangerous circumstance, TD's required Threadgill to perform a task that it knew or should have known would likely result in Threadgill's injury or death. *See Mayfield Smithson Enters. v. Com-Quip, Inc.*, 1995-NMSC-034, ¶ 22, 120 N.M. 9, 896 P.2d 1156 ("Summary judgment is appropriate when a defendant negates an essential element of the plaintiff's case by demonstrating the absence of an issue of fact regarding that element."); *Goradia v. Hahn Co.*, 1991-NMSC-040, ¶ 18, 111 N.M. 779, 810 P.2d 798 ("A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (alteration, internal quotation marks, and citation omitted)).

**CONCLUSION**

{23} The district court's rulings are affirmed.

{24} **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____

**JULIE J. VARGAS, Judge**

_____

**EMIL J. KIEHNE, Judge**